[No. 12041.    Department Two.    December 22, 1914.]

THE STATE OF WASHINGTON, *Appellant*, v. GEORGE VOSGIEN, *Respondent*.[1]

FISH — FISHERIES — REGULATIONS — "SET NETS" — "FIXED APPLIANCES"—CONSTRUCTION. A "set net" one end of which was fastened to a fixed object on the bank of a river, and the other end to a buoy in the river held in place by an anchor which was removable, so that salmon could be caught in the net without the aid of a human being, is a "fixed appliance" within the meaning of Rem. & Bal. Code, § 5183, making it unlawful to maintain in specified waters any pound net, trap, weir, fish wheel or "other fixed appliance" "set lines excepted;" in view of the ordinary meaning of "set" and the history of our statutes classifying set nets among fixed appliances, and in view of the provision excepting all "set lines;" notwithstanding a law for the collection of licenses enumerates the set net with the less permanent appliances; and notwithstanding § 5216, providing that nothing in the act shall prevent fishing with set nets in any of the rivers of the state, except when specially prohibited by law etc.; since the latter section was not intended as an exception to the prohibitions of § 5183, but as an independent provision relating to other waters.

SAME. Rem. & Bal. Code, § 5193, determining the size of set nets allowable in certain waters, has no bearing upon the prohibition of set nets in portions of such waters.

Appeal from an order of the superior court for Snohomish county, Bell, J., entered April 27, 1914, sustaining a demurrer to an information. Reversed.

*R. J. Faussett* and *Joseph H. Smith*, for appellant.

*Ralph D. Nichols* and *G. E. Steiner*, for respondent.

*The Attorney General* and *Edward W. Allen, Assistant*, amici curiae.

[1]Reported in 144 Pac. 947.

Ellis, J.—This is an appeal by the state from an order sustaining a demurrer to an information on the ground that the facts charged did not constitute a crime. The charging part of the information is as follows:

"The said defendant, George Vosgien, did unlawfully operate and maintain within the Snohomish River below the Snohomish wagon bridge, to wit: 1914 Map location No. 173, a fixed appliance, to wit; a set net, for the purpose of catching salmon for commercial purposes, which said set net was operated and maintained in the following manner, to wit; one end was fastened to a fixed object on the bank of said Snohomish River and the other end was fastened to a buoy in said river, which buoy was held in place by an anchor dropped to the bottom of the stream, but which could be removed by said defendant, and in which set net salmon could be caught without the aid of a human being."

It is clear that this information charges no offense under the provisions of § 46 of the Game Code, Laws of 1913, p. 378 (3 Rem. & Bal. Code, § 5395-46), as construed in *State v. Allen*, 80 Wash. 83, 141 Pac. 292, since it does not charge that the net in question was set above tide water. Only two questions, therefore, are involved: (1) is a set net such as described in the information a fixed appliance within the meaning of Rem. & Bal. Code, § 5183 (P. C. 191 § 63); (2) if so, is its use excepted from the prohibition of that section, by Rem. & Bal. Code § 5216 (P. C. 191 § 85)? These sections, so far as pertinent, read as follows:

"§ 5183. Hereafter it shall be unlawful to · construct, own, operate and maintain within any of the rivers of this state flowing into Puget Sound and within said bodies of water within a distance of three miles from the mouth of any such river, and also within that arm of Puget Sound and body of water known as Deception Pass, or within one-half mile of the west entrance thereof and in any of the other salt waters of this state at a greater depth than sixty-five feet at low tide, any pound net, trap, weir, fish-wheel, or other fixed appliance, set lines excepted, for the purpose of catching salmon or other food fishes, and for the purpose of enforcing the provisions of this section, the fish commissioner

shall indicate the mouths of said rivers by driving piles therein. It shall also be unlawful hereafter to use any purse net, purse seine, or other like seine within two miles, and drag seines within one mile from the mouth of any of said rivers or within said rivers."

"§ 5216. Nothing in this act shall be so construed as to prevent fishing with set nets in any of the rivers of this state except when such fishing is expressly prohibited by law or prohibited by the fish commissioner in his discretion in rivers on which are located state fish hatcheries."

It is a primary rule of statutory construction that, in the absence of a statutory definition or a well established technical meaning, ordinary words and phrases of a well known and definite sense when used in a statute must be accorded that meaning unless clearly controlled by the context. Endlich, Interpretation of Statutes, § 2; Lewis' Sutherland, Statutory Construction, §§ 389, 390; *Knipe v. Austin*, 13 Wash. 189, 43 Pac. 25, 44 Pac. 531. While it is true that, as a general rule, the whole statute will be consulted in order to determine the meaning of ambiguous words or phrases in a given section, that rule is not without exceptions. If the meaning of words or phrases can be found in the section itself in which they are used, that meaning should be applied without recourse to anything beyond, unless it leads to a conflict or incongruity when compared with other portions of the act. Endlich, Interpretation of Statutes, § 41.

Giving to the words above quoted from § 5183 their obvious and ordinary meaning in their immediate connection without reference to other sections of the statute, it seems too plain for cavil that a set net was intended to be covered by the words, "other fixed appliance." These words are followed by the words, "set lines excepted." Obviously a set line is here classed as a fixed appliance and is made the sole exception from the purview of the prior inhibition of the use of fixed appliances. The primary definition of the word "set" is, "fixed in position; immovable; rigid; as a set line." Webster's New International Dictionary. It will hardly be

claimed that a set net is any less set, that is, fixed in position or immovable, than a set line.

It is also a rule of construction peculiarly applicable to the statute here, that the language and provisions of expired or repealed acts on the same subject are to be taken into consideration as instructive steps in the development of the existing system of legislation upon a given subject. Endlich, Interpretation of Statutes, § 48. Turning to the earlier laws touching fishing appliances, we find that, from the beginning of our statehood down to the enactment of § 5216, above quoted, as § 11, of the act of 1899, Laws of 1899, p. 204, set nets *eo nomine* have been classified with traps, pound nets, weirs, and fish wheels as fixed appliances. The earliest act upon the subject is that of February 11, 1890, Laws of 1889-90, p. 106. Section 6 of that act begins as follows:

"It shall not be lawful for any pound net, set net, trap, weir, wheel or other fixed appliance for taking fish, to extend more than one-half of the way across the breadth of any stream, channel or slough of any waters mentioned in this act. . . ."

The act of 1893, Laws of 1893, p. 15, makes the same classification, section 1 beginning as follows:

"No person or persons shall own, operate, or construct and own, or cause to be constructed and operated any pound net, trap, set net, weir, fish wheel or other fixed appliances for catching salmon on the waters of the Columbia river and its tributaries and Puget Sound, in the State of Washington, without first obtaining from the fish commissioner a license for each trap, pound net, weir, set net, fish wheel, or any other fixed appliances. . . ."

See, also, §§ 2, 4 and 7 of the same act.

Coming now to the evolution of § 5183, as at present reading, we find that the part of that section which we have quoted was first enacted in § 1 of the act of 1897, ch. 82, Laws of 1897, pp. 214, 215, in almost the same words, with the exception that its provisions applied to the rivers flow-

ing into Grays Harbor as well as to those flowing into Puget Sound, and set lines were not excepted. While in this first section of the act of 1897, a set net is not classified *eo nomine* as a fixed appliance, it is so classified in § 3 of the same act, where the following is found:

"A separate license shall be required for each trap, pound net, weir, set net, fish wheel or any other fixed appliance, and for every purse net, drag seine or other seine, gill net or drift net. . . ."

See, also, §§ 5 and 8 for the same inclusive classification. True § 4 of this act, Rem. & Bal. Code, § 5192 (P. C. 191 § 67), relating to the marking of licensed appliances, enumerates set nets with gill nets, seines and purse nets, but that was doubtless because of the similiarity in the method of marking provided for licensed appliances, and not with any view to defining a fixed appliance. Clearly the language used in the present § 5183, when originally enacted into law, was intended to include and did include a set net within the term "fixed appliance."

The language first hereinbefore quoted from § 5183 was reenacted as a part of § 1 of the act of 1899, in which act Rem. & Bal. Code, § 5216 for the first time appears, being § 11 of that act. It is significant, that notwithstanding the inclusion in this same act of § 11, the implied inclusion of the set net in the term "other fixed appliance" is made imperative by excepting, from the prohibition in § 1 against the use of fixed appliances, the set line. In the act of 1899, we again find some confusion as to the status of a set net, in that § 2 of the act again classes set nets with seines and drift nets for the purpose of marking and licensing. Since that section applies only to the use of appliances in all waters of the state where not prohibited by § 1 (Rem. & Bal. Code, § 5183) it can hardly be construed as affecting the necessary implication found in § 1, that a set net is a fixed appliance within the meaning of § 1.

Finally, the legislature of 1909 amended § 1 of the act of 1899 by again reenacting the part which we have quoted from § 5183 of Rem. & Bal. Code, but adding thereto four distinct provisos limiting the application of the language quoted by providing, in effect, (1) that the prohibition should not prevent the catching of fish for home consumption; (2) that a certain closed season should prevail on the Skagit river; (3) that nets with meshes of a certain limited stretch measure might be used, and, (4) that a certain part of the Snohomish river should not be commercially fished at all. Section 11 of the act of 1899 (Rem. & Bal. Code, § 5216) was not reenacted nor referred to as an exception to the operation of the first section in any manner. This circumstance, we think, has an important bearing upon the question whether § 5216 was regarded by the legislature as excepting set nets from the prohibition of § 5183, either before or after the amendment.

"The introduction of an exception or saving clause may have an important bearing on the construction of the enacting part of the statute, for it may show it to be more comprehensive than would appear merely from the words used, on the principle that when certain exceptions are specified, no others are intended." Black, Interpretation of Laws (2d ed.), p. 438, § 131.

Had the legislature intended to make or to recognize any further exceptions to the enacting portion of § 5183 as originally contained in the act of 1899, it seems safe to say that, in reenacting that section in 1909 for the very purpose of amending it and limiting its scope, it would have made some reference to § 5216, which it is now urged by the respondent, was all along an exception to those general provisions. The case would be different if § 5216 had no room for operation other than as an exception to the prohibitions of § 5183, but it has ample scope for operation otherwise. It permits the use of set nets only where not prohibited by law or an order of the fish commissioner. Section 5183, as we have

seen, by necessary implication prohibits their use, but only in rivers flowing into Puget Sound. All other rivers were eliminated from the operation of that section by the first reenactment of 1899 simultaneously with the first and only enactment of § 5216, which applies to "any of the rivers of this state" except where not prohibited by law or the commissioner. There is thus presented a field for its operation as applied to other rivers of the state than those flowing into Puget Sound. That field has existed since its first enactment. It seems clear to us that § 5216 was never intended as an exception to § 5183, but as an independent provision relating to waters not included in the prohibition of that section.

This construction tends to further the vital purpose of the act as clearly recognized by this court in *Cherry Point Fish Co. v. Nelson,* 25 Wash. 558, 66 Pac. 55, where it is said:

"The act in question has as its principal object the protection of food fishes. It absolutely prohibits the construction of any fixed appliance, set lines excepted, in any of the waters of Puget Sound within three miles of the mouth of any river flowing therein; clearly showing that it was the intention of the law makers to provide for an open and unobstructed passage way for the fish to enter these rivers, which are their natural spawning places."

The other view would run counter to what we conceive to be the plain meaning of § 5183 and tend to frustrate the manifest purpose of its enactment.

The trial court seems to have been influenced by Rem. & Bal. Code, § 5193, which reads, in part, as follows:

"It shall be unlawful for any person, firm or corporation on Puget Sound or its tributaries to fish for salmon by means of set nets of greater length than three hundred feet, and no set net shall be permitted to be constructed in the form of a pound net or with pots or hearts connected therewith or in any other means than by stakes driven in substantially a straight line. . . ."

We fail to see what bearing this section has upon the classification of a set net as a fixed appliance or otherwise except that it indicates a substantiality and permanence in construction meeting the concept of a fixed appliance. Nor do we see that this section can be construed as authorizing the use of set nets in rivers flowing into Puget Sound or into parts of the Sound to which the prohibition of § 5183 expressly applies.

Section 5215 (P. C. 191 § 83), making it a misdemeanor to operate fishing appliances without a license, or under an assigned license without notice to the fish commissioner, is also called to our attention in that it enumerates the set net with the less permanent, and not with the fixed appliances. This incongruity possibly resulted from following the classification for licensing and marking found in § 5192. Be that as it may, we would not be warranted in saying that it was ever intended to override the express classification of a set net as a fixed appliance in all of the earlier laws and the clear implication to the same effect in every law, including § 5183, whenever the quality of fixedness was the professed basis of the classification and had a direct reference to the purpose of the classification.

An analysis of the statutes forces us to the conclusion that the demurrer to the information should have been overruled. The judgment is reversed, and the cause is remanded for further proceeding.

CROW, C. J., MAIN, MOUNT, and FULLERTON, JJ., concur.