[No. 28401.   Department Two.   December 18, 1941.]

MONROE CALCULATING MACHINE COMPANY, *Respondent,*
v. THE DEPARTMENT OF LABOR AND INDUSTRIES,
*Appellant.*[1]

[1]Reported in 120 P. (2d) 466.

*The Attorney General* and *Edward S. Franklin, Assistant,* for appellant.

*Metzger, Blair & Gardner,* for respondent.

JEFFERS, J.—This is an appeal by the department of labor and industries of the state of Washington (hereinafter referred to as the department) from a judgment entered by the superior court for Pierce county, in favor of plaintiff, Monroe Calculating Machine Company, Inc. (hereinafter referred to as the company).

On February 21, 1940, and again on March 14, 1940, the department informed the company, whose main office is at Orange, New Jersey, that its operations in its three branch offices in Tacoma, Seattle, and Spokane, Washington, came under the workmen's compensation act of this state, and that it would have to establish an account with the department as of January 1, 1940, and pay premiums on every hour worked by the servicemen while away from the shop premises, and on the time of employees while working in the repair shop on the company's premises. Both of these letters informed the company of the action of the department, and contained the same general information, except that the letter of February 21st informed the company that it was subject to the act for workmen employed as truck drivers. We think this reference to truck drivers was clearly made through some misunderstanding, as the company claimed to have no truck drivers, the joint board did not find it had any, and the trial court expressly found it had none.

The company applied to the joint board for a rehearing on the order of the department, which was granted, and on July 20, 1940, the matter came on for hearing before Mr. L. E. O'Neill, an examiner for the depart-

ment, at Tacoma. At this hearing, the company was represented by Frank M. Zelinski, who was in charge of the company's branch office at Tacoma, and by local attorneys. The only witness who was sworn and testified was Mr. Zelinski.

This testimony was in substance as follows: That the company has three branch offices in the state of Washington, located at Tacoma, Seattle, and Spokane, and that these offices are primarily sales offices for the selling and distribution of Monroe calculating and adding machines and check writing machines; that the office force in Tacoma consists of two or three servicemen, one stenographer, one salesman, and Mr. Zelinski; that the office force maintained in Seattle and Spokane is similar to that in Tacoma. The witness further testified that the servicemen are primarily concerned with maintaining the machines which have been sold and which are being made ready for sale; that the machines are shipped from the company's plant at Orange, New Jersey, where they are manufactured; that only minor repairs, such as putting in and replaceing small parts, cleaning, and oiling machines, are made in the company's offices in Washington; that, when major repairs are required, the machines are shipped to the home office at Orange, except machines not made by plaintiff company, taken in trade, which are shipped to the San Franscisco office for repair.

Mr. Zelinski further testified that the repair shop in each of the branch offices in this state maintains and uses the following power-driven machinery: One small emery wheel, about three inches in diameter, connected to a one-thirtieth horsepower motor, which is used about thirty minutes a day to remove burrs or rough spots on machines; a small electric air compressor, which compresses air in a tank, from which the air is released by a push button, through a hose,

and is used to blow dust off the machines instead of wiping them by hand; a drill press, weighing about one hundred twelve pounds, operated by an electric motor of one-thirtieth horsepower, used for facing the governor discs, a small brass plate against which the carbon brushes make contact to operate the machine. He testified that in the Spokane office there is a small power-driven lathe in place of the drill press, and that all the offices also have a "handy grinder," which is an electrically operated machine about five inches long and one and one-half inches in diameter, and is held in the hands and used to smooth off parts of the machine without disassembling it.

Mr. Zelinski also testified that the servicemen put in about ten per cent of their time in overhauling turned in machines; that about seventy per cent of the time devoted to repair and maintenance work is spent in the repair shops maintained by the company in connection with each of its three branch offices, and about thirty per cent is devoted to repair work performed in the offices of customers; that only minor repairs are made in the customers' offices, and about the only tools used are a pair of pliers and a screw driver; that this thirty per cent is figured by computing the time the man is gone from the office.

On August 2, 1940, the joint board entered findings, from which it concluded:

"After review and consideration of the entire record, the joint board concludes that the operations of the petitioner in installation of power driven machinery by service men, repairing of such machines in shops where power driven machinery is used, and the servicing of power driven machinery, are within the compulsory provision of the act as outlined in section 7674, the definition of work shop outlined in section 7675, Remington's Revised Statutes, and the 1939 amendments to the classification schedules as outlined particularly in classification 6-1, 6-3, and 34-2. That there-

fore the petitioner's appeal should be denied, the supervisor's action sustained, classifying the above operations of the petitioner as properly within the compulsory provisions of the act."

From this order of the joint board, the company appealed to the superior court for Pierce county, which heard the appeal upon the record made before the joint board, and thereafter entered findings of fact, from which it concluded that the company's operations in this state did not come within the purview of the act, and entered judgment to that effect. The court found:

"That plaintiff employs no truck men and is not engaged in the business of teaming, hauling or drayage. . . .

"That plaintiff does not maintain in the state of Washington a workshop or factory wherein power-driven machinery is employed within the meaning of the workmen's compensation act of the state of Washington; that plaintiff is not an employer engaged in any extrahazardous work within the state of Washington; that plaintiff's employees are not workmen engaged in such manner as to come within the definition of 'workmen' as defined in the workmen's compensation act."

The decree entered by the trial court reversed the order of the joint board, and the cause was referred back to the department for further proceedings in conformity with the findings of the trial court. The department has appealed.

Error is assigned upon the making and entering of finding of fact No. 5 (this finding should be correctly numbered finding No. 7); upon the entry of conclusion of law No. 1; and upon the entry of judgment reversing the order of the supervisor, dated March 14, 1940, and of the joint board of the department, dated August 2, 1940. The finding that respondent employs no truckmen is not assigned as error, and is fully supported by the evidence.

It is appellant's position that the operation by re-

spondent of its repair shops constitutes the operation of a factory or workshop, as enumerated in the list of extrahazardous employments in Rem. Rev. Stat. (Sup.), § 7674 [P. C. § 3469]. This section classifies as extrahazardous "workshops" where machinery is used. Section 7675 [P. C. § 3470] defines "workshop" as follows:

"Workshop means any plant, yard, premises, room or place wherein power-driven machinery is employed and manual labor is exercised by way of trade for gain or otherwise in or incidental to the process of making, altering, repairing, printing or ornamenting, finishing or adapting for sale or otherwise any article or part of article, machine or thing, over which premises, room or place the employer of the person working therein has the right of access or control, except when otherwise expressly stated."

Under Rem. Rev. Stat. (Sup.), § 7676 [P. C. § 3471], classification 34-2, we find the following employment listed: "Machine shops (N. O. S.)" Under this same classification we find the following:

"(This class to apply to all employers who operate a shop using power-driven machinery for the purpose of manufacturing (N. O. S.), repairing or servicing articles.)"

There is and can be no question but that respondent used and maintained power-driven equipment in each of its branch offices, in connection with its repair and maintenance service. It would seem to be rather evident that such equipment driven by electric power constitutes power-driven machinery, and that its employment on respondent's premises, in a place controlled by respondent, together with manual labor in the process of repairing and adapting for sale respondent's calculating and adding machines and check writing machines, constitutes that room a "workshop," as that term is defined by the statute.

In *Wendt v. Industrial Insurance Commission*, 80 Wash. 111, 141 Pac. 311, we stated:

"It being shown that the deceased, at the time of his injury, was employed in a 'workshop where machinery is used;' that the workshop was a place 'wherein power-driven machinery is employed and manual labor is exercised . . . over which place the employer of the person working therein has the right of access or control,' and that he was injured 'upon the premises,' it seems to us there is no escape from the conclusion that his injury is within the purview of the act."

In *Gowey v. Seattle Lighting Co.*, 108 Wash. 479, 184 Pac. 339, we held that the use of a power-driven machine in making stencils in the general offices of a company converted those offices, in so far as the operation of this machine was concerned, into a "factory" or "workshop," within the meaning of the workmen's compensation act.

■ Respondent contends that it is primarily engaged in the sale and distribution of its office machines; that this business is not classified as extrahazardous; and that the repair and maintenance men are employed as a mere incident to its principal business. This argument is met and decided contrary to respondent's contention by our cases which are to the effect that an employer may engage in an extrahazardous occupation as a department of his main or principal nonhazardous employment, and to that extent is brought within the compulsory features of the act. *Wendt v. Industrial Insurance Commission, supra; State v. Business Property Security Co.*, 87 Wash. 627, 152 Pac. 334; *Denny v. Department of Labor & Industries*, 172 Wash. 631, 21 P. (2d) 275; *Lunday v. Department of Labor & Industries*, 200 Wash. 620, 94 P. (2d) 744.

■ Respondent also contends that such small and harmless pieces of power-driven machinery were not within the legislative contemplation of the term

"power-driven machinery." If these electrically powered devices are not "power-driven machinery," because the power units are small, then where is the court to draw the line on this basis? Are we to say that a machine driven by a one horsepower motor is a power-driven machine, but that one driven by a one-half horsepower motor is not? And if we try to make such a distinction, should we consider the degree of danger inherent in each type of machine? We conclude that it is not for the court to make any such distinction, and we are content to leave these refinements to the legislature, with whom the power to make such classifications lies.

Furthermore, we believe that a close examination of the act under consideration will disclose that the legislature has already clarified its intent to include even the small and comparatively harmless machinery of the type employed by respondent. Rem. Rev. Stat. (Sup.), § 7674, enumerates the extrahazardous occupations, including "workshops." Following this enumeration appears the following:

*"Provided, however,* The following operations shall not be deemed extra-hazardous within the meaning, or be included in the enumeration of this section, to-wit: Using power-driven coffee grinders in wholesale or retail grocery stores; using power-driven washing machines, in establishments selling washing machines at retail; using computing machines in offices; using power-driven taffy pullers in retail candy stores; using power-driven milk shakers in establishments operating soda fountains; using power-driven hair cutters in barber shops; using power-driven machinery in beauty parlors; using power-driven machinery in optical stores."

The legislature must have assumed that the items listed in the proviso were otherwise included within the scope of the enumerated extrahazardous employments, making these exceptions necessary in order to

prevent these particular activities from coming within the act. Observing the character of the power-driven machines listed in the proviso, we note that they are all comparable to the equipment used by respondent, in that they apparently utilize motor units of about the same capacity. It seems to us the conclusion impelled by this proviso is that machinery of the type operated by respondent comes within the scope of the act, unless excepted therefrom.

Although it is the office of a proviso or exception to restrain or modify the enacting clause, nevertheless the proviso may be considered in arriving at the intended legislative scope of the enacting clause. *State v. Vosgien*, 82 Wash. 685, 144 Pac. 947; *State v. Ripley*, 104 Wash. 299, 176 Pac. 343; *Spokane v. State*, 198 Wash. 682, 89 P. (2d) 826; *McKenzie v. Mukilteo Water District*, 4 Wn. (2d) 103, 102 P. (2d) 251.

The proviso specifically enumerates the machines excepted from the operation of the act, and that enumeration includes none of the machines used by respondent. Express exceptions in a statute exclude all other exceptions, and can not be extended by implication. *Tabb v. Funk*, 170 Wash. 545, 17 P. (2d) 18; *Spokane v. State, supra*; *McKenzie v. Mukilteo Water District, supra*. In the *Tabb* case, we quoted from the early case of *Sackman v. Thomas*, 24 Wash. 660, 64 Pac. 819, as follows:

" ' . . . a proviso carves special exceptions only out of the enacting clause, and those who set up any such exception must establish it as being within the words, as well as within the reason, thereof.' "

As also indicating that the legislature, in making its classifications, was not governed by the size of the machine, we call attention to class 6-1, under § 7676, *supra,* where we find the following classification:

"Electrical installations (servicing and repairs N. O. S.) (excludes shop work) (includes household in-

stallation and servicing of manufactured household electrical appliances) (See class 34-2 for shopwork)."

We are of the opinion that the legislature has manifested its intention to classify as a workshop a room containing power equipment of the type employed by respondent, which is used under the circumstances here disclosed.

The next question is whether respondent is engaged in an extrahazardous activity when its employees are servicing equipment in customers' offices.

Rem. Rev. Stat. (Sup.), § 7676, classifies and subclassifies the various types of employment covered by the act, and establishes the basic premium rates payable with reference to each. Class 6-3 thereof reads in part: "Machinery (servicing away from shop premises)."

It is admitted that the service performed on machines in customers' offices is only of the most minor character. It is done only with the aid of such tools as a screw driver and pliers. If the repair work proves to be at all intricate, the machine is removed to respondent's shop for that purpose, or is sent to the New Jersey factory. Appellant contends that nevertheless this activity amounts to servicing machinery away from shop premises, and therefore is an employment within the provisions of the act.

We are inclined to agree with appellant. There can be no question but that respondent's calculating and adding machines and check writing machines are "machinery," and it is equally clear that the minor repairs and oiling jobs performed on the machines in customers' offices constitute "servicing" them "away from the premises." It is not a statutory requisite of such servicing that the work be performed by any particular kind of tools, either manual or power operated. Respondent makes but one contention in this connection, and that is that, although respondent's products are

machinery, they are not machinery of the kind meant by the legislature when it used those terms in class 6-3, of § 7676, *supra*; in other words, that the term "machinery" does not include all machinery, and particularly does not include respondent's office machinery. Respondent points to the other items listed in class 6-3, *supra,* and then invokes the *doctrine* relative to the rule of *ejusdem generis,* to show that the servicing of business office equipment is so unrelated to these other items in character and in the hazard involved, that the legislature would have included it by express classification, had it been the legislative intent to include it at all. We set out in full the items listed in class 6-3, § 7676, *supra*:

"Belts (erection of shafting, etc.)
"Dynamos (installation)
"Engine (installation)
"Gas·machine (installation)
"Machinery (N. O. S.)
"Machinery (dismantling)
"Machinery (installation)'
"Machinery (servicing away from shop premises)
·"Railroad (dismantling), (excludes bridges, trestles and snowshed wrecking)
"Elevators (freight or passenger) (installation and repair)"

It is certainly true, as respondent argues, that some of the employments embraced in this class are entirely dissimilar in character from the servicing of office equipment, but we cannot say that this is necessarily true as to all of them. Included in the list are machinery (N. O. S.) (not otherwise specified), and the installation of engines, gas machines, and machinery. The legislature has placed no limitation whatsoever on the meaning of these terms. Engines, gas machines, and machinery may be of any size, nature, or description. We know of no definition of machinery which excludes

certain mechanisms therefrom merely because they are comparatively small or safe to operate. Webster's New International Dictionary defines a "machine" as a construction or contrivance of a mechanical sort, the work of human hands. "Machinery" is defined by the same work as "machines, in general, or collectively; also, the working parts of a machine, engine or instrument; as, the machinery of a watch."

Here again we are confronted with the proposition that, if we do not apply the act according to the plain meaning of the words therein employed, we are left completely without legislative guidance in deciding what is and what is not "machinery," within the intendment of the act. Where an act, in plain and unambiguous terms, clearly brings a certain employment within its scope, and it is not unconstitutional to do so, it is not for us to invade the legislative province by implying unexpressed restrictions and exceptions.

The judgment of the trial court is reversed and the cause remanded, with instructions to enter judgment affirming the decision of the joint board.

ROBINSON, C. J., BEALS, BLAKE, and SIMPSON, JJ., concur.