[No. 40859.    En Banc.    April 23, 1970.]

RITA SCOTT, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES *et al.*, *Appellants.**

*Reported in 468 P.2d 440.

*The Attorney General, Michael E. Donohue* and *Thomas R. Chapman, Assistants, Reiley & Annis,* and *Paul A. Bastine,* for appellants.

*Geo. W. Young,* for respondent.

McGOVERN, J.—July 6, 1966 Rita Scott was injured while at work when a chair rolled out from beneath her when she attempted to be seated. July 19, 1966 she filed her report of accident with the Department of Labor and Industries seeking compensation for the injury.

August 26, 1966 the Supervisor of Industrial Insurance rejected her claim, stating that she was not an insured under the Industrial Insurance Act. The Board of Industrial Insurance Appeals sustained the order of the Department of Labor and Industries. The superior court, sitting without a jury, thereafter entered findings of fact, conclusions of law and judgment reversing the order of the board and remanded the cause to the Department of Labor and Industries for further proceedings. The department and Data Processing Services, Inc., Rita Scott's employer at the time of the accident, appeal.

The facts are undisputed. Rita Scott and four other persons were employed as key punch operators in a room where seven key punch machines were located. The employer furnished each operator with certain written information pertaining to the business operations of a client, and the key punch operator then transferred that information onto IBM cards by depressing the key punch machine keys which perforate the IBM card. Each machine holds approximately 500 cards, and an operator punches about 2,000 cards per day.

On the day in question, Mrs. Scott returned from a supply room with some IBM cards. When she attempted to seat herself on the chair in front of a key punch machine, the chair rolled out from beneath her, she landed on the floor and was injured.

Mrs. Scott's employer, Data Processing Services, Inc., had not paid premiums to the state to have Mrs. Scott and

the other key punch operators covered under the Industrial Insurance Act. Mrs. Scott contends, however, that her employer should have paid such premiums because its operation fell within the compulsory provisions of the act and that she was therefore insured under the terms of the act at the time of the injury. The record indicates that Data Processing Services, Inc. had neither been classified by the Department of Labor and Industries as being engaged in extrahazardous work "by way of trade or business" nor had it been required to pay industrial insurance premiums because it was operating a workshop where machinery is used.

Appellants' assignments of error are several in number but each assignment is concerned with the same issue, *i.e.*, was Mrs. Scott injured while working in a "workshop" as that term is defined and used in the state Industrial Insurance Act? If she was, then she was engaged in extrahazardous employment and was entitled to certain benefits under the act. However, we find that she was not so employed and therefore reverse the order of the superior court.

█ In reaching our conclusion, we have considered the statutory definition of "workshop" as used in the act and we have considered the spirit and letter of that definition in the light of its history and precedents. We have also applied the rule of liberal construction to the provisions of the act for the reason that the act is remedial in character, even though adopted in derogation of the common law. *Berry v. Department of Labor & Indus.*, 11 Wn.2d 154, 118 P.2d 785, 140 A.L.R. 392 (1941). Even the rule of liberal construction is subject, however, to reasonable limitations.

The reasons ascribed for enactment of the Industrial Insurance Act are detailed in the Laws of 1961, ch. 23, § 51.04.010, p. 1294, as follows:

> The common law system governing the remedy of workmen against employers for injuries received in hazardous work is inconsistent with modern *industrial* conditions. In practice it proves to be economically unwise and unfair. Its administration has produced the result that little of the cost of the employer has reached the

workman and that little only at large expense to the public. The remedy of the workman has been uncertain, slow and inadequate. Injuries in such works, formerly occasional, have become frequent and inevitable. The welfare of the state depends upon its *industries,* and even more upon the welfare of its wage worker.

(Italics ours.)

And the employments intended to be covered by the act were specified in the Laws of 1961, ch. 23 § 51.12.010, p. 1300, which provides in part:

> There is a hazard in all employment, but certain employments have come to be, and to be recognized as being *inherently constantly dangerous.* This title is intended to apply to all such inherently hazardous works and occupations, and it is the purpose to embrace all of them which are within the legislative jurisdiction of the state, in the following enumeration, and they are intended to be embraced within the term "extrahazardous" wherever used in this title, to-wit:
>
> Factories, mills and workshops where machinery is used . . .

(Italics ours.)

It is the word "workshop" which respondent contends brings her employer within the compulsory provisions of the act. This is so, she argues because the word is defined in the act as "any plant, yard, premises, room, or place wherein power driven machinery is employed and manual labor is exercised by way of trade for gain or otherwise, over which the employer of the person working therein has the right of access or control." RCW 51.08.190.

The respondent argued, and the trial court found, that the "room" wherein respondent worked and was injured contained "power-driven machinery", *i.e.,* the electric key punch machines which were operated manually by depressing the keyboard keys. In consideration of that and other findings, the court then concluded that Mrs. Scott was employed in a "workshop".

■ We, however, are unable to obtain that literal interpretation of the defining statute. The "manual labor" performed by the respondent and the "power-driven machin-

ery" used by her are not the type of labor or class of machinery contemplated by the legislature when it adopted the foregoing definition of "workshop". If we were to agree with the trial court, then every office, even if its only power-driven machinery is an electric typewriter, becomes a "workshop" under the act. If the typewriter is not electric then the office does not qualify as a "workshop" under the act and the employee is not covered. No such result could have been either contemplated or intended by the legislature.

While the legislature has the authority to extend the coverage of the Industrial Insurance Act to all employments and occupations, we are satisfied that it did so only with respect to those employments which "have come to be, and to be recognized as being inherently constantly dangerous" in the light of "modern industrial conditions", and office work of a strictly clerical nature cannot be said to be either "inherently constantly dangerous" or one of the "industrial conditions" against which the workman needed legislative help.

Mrs. Scott had no duties in connection with her employment except to operate the key punch machine, work that is more dependent upon intelligence and adroitness than upon physical exertion. All repairs and maintenance of the machine were performed by independent contractors. That being so, Mrs. Scott was not performing "manual labor" within her employer's premises at the time of her injury and we conclude that the room in which she was then working was not a "workshop".

Respondent argues that both *Monroe Calculating Mach. Co. v. Department of Labor & Indus.*, 11 Wn.2d 636, 120 P.2d 466 (1941) and *Gowey v. Seattle Lighting Co.*, 108 Wash. 479, 184 P. 339 (1919) support her claim to benefits under the act. We do not agree. In *Monroe* the issue was whether the Department of Labor and Industries could compel the employer to pay industrial insurance premiums for the hours worked by its regularly employed servicemen in providing minor repairs and maintenance to business

machines owned or sold by the employer. About 70 per cent of the time devoted to this repair and maintenance work was spent in repair shops maintained by the employer in connection with each of its three branch offices and the remaining time was devoted to repair work performed in the offices of customers. The employer's offices were equipped with low-powered electrically driven machines, including emery wheels, air compressors, a lathe and a drill press. Only minor repairs were made in the customers' offices. In holding that the employer was required to pay premiums on its workshop operations, we said in *Monroe*, 11 Wn.2d at 641:

> There is and can be no question but that respondent used and maintained power-driven equipment in each of its branch offices, in connection with its repair and maintenance service. It would seem to be rather evident that such equipment driven by electric power constitutes power-driven machinery, and that its employment on respondent's premises, in a place controlled by respondent, together with *manual labor* in the process of repairing and adapting for sale respondent's calculating and adding machines and check writing machines, constitutes that room a "workshop," as that term is defined by the statute.

(Italics ours.)

We also held that the employer was required to pay industrial insurance premiums on its repair and maintenance services performed in the offices of customers. In arriving at that conclusion, we found that the minor repairs performed on the machines in customers' offices constituted "servicing" them "away from the premises" and that it was not a statutory requisite of such servicing that the work be performed with any particular kind of tools, either manual or power operated. *Monroe* is therefore distinguishable because the issue there involved repair and maintenance *services* by regularly employed *servicemen*. Here Mrs. Scott's duties did not include repair or maintenance services. Her sole function was to operate the key punch machine, the operation of which is little different from that of an electric typewriter. That is not manual labor.

894

In *Gowey* an employee sued his employer for personal injuries sustained in the office of the employer while the employee was operating a power-driven machine which was stamping out address stencils on strips of zinc metal. One of the defenses raised by the employer was that the plaintiff employee was engaged in extrahazadrous employment within the meaning of the Industrial Insurance Act and therefore was precluded from maintaining her action against the employer. In finding that such work was within the coverage of the Industrial Insurance Act, we set out the statutory definitions of "factories" and "workshops" as those definitions then appeared and in which the following occupation classifications were enumerated for premium purposes: "stamping tin or metal", "canneries, metal stamping, extra"; "zinc, brass or lead articles or wares not otherwise specified"; "printing". On that basis we held that the injured employee was engaged in extrahazardous work within the Industrial Insurance Act which precluded her from maintaining an action for personal injuries against her employer. The deciding factor in *Gowey* is missing here where there is no specific classification for machines which punch holes in pieces of cardboard. It should also be noted that in *Gowey* the statutory definition of "workshop" contained significant provisions which do not appear in the current definition. The definition of workshop quoted in *Gowey*, 108 Wash. at 482, was as follows:

"Workshop means any plant, yard, premises, room or place wherein power-driven machinery is employed and manual labor is exercised by way of trade for gain or otherwise in or incidental to the process of making, altering, repairing, printing, or ornamenting, finishing or adapting for sale or otherwise any article or part of article, machine or thing, over which premises, room or place the employer of the person working therein has the right of access or control."

*Gowey* is not applicable to the facts in the present case.

We believe that to hold that this respondent was employed in a workshop doing manual labor would be to extend the provisions of the Industrial Insurance Act to

cases not fairly within the scope of the act. However humane the spirit of the act may be, such spirit cannot warrant the extension argued for by the respondent.

The order of the trial court is reversed.

ALL CONCUR.

May 27, 1970. Petition for rehearing denied.