[No. 7407-5-I. Division One. May 27, 1980.]

OSCAR HEARDE, ET AL, *Appellants,* v. THE CITY OF SEATTLE, ET AL, *Respondents.*

---

*Craig F. Schauermann* and *Darrell E. Lee,* for appellants.

*Douglas N. Jewett, City Attorney,* and *Dona Cloud, Assistant,* for respondents.

WILLIAMS, J.—Oscar Hearde, Esther Hearde and Hans P. Petersen, as the class representatives, brought this class action against the City of Seattle and others to challenge a city ordinance retroactively placing a surcharge upon electricity bills. The ordinance was passed on June 1, 1977, and became effective 30 days later. All electric bills going out from Seattle City Light for a 6–month period after June 1 carried the surcharge. Because the bills were for electricity delivered for either 1– or 2–month periods, the effect of the ordinance was to increase the cost in different amounts to all customers for the months of April and May and thereafter until November 30. The Heardes and Petersen represent 245,000 residential customers and 30,000 commercial customers as a class to void the ordinance and recover all surcharges paid for the 6 months, or, at the least, to recover

the surcharges paid for electricity delivered in April and May. The trial court dismissed the action; we affirm.

The facts as gleaned from the trial court's uncontested findings are that in late 1976 and through much of 1977, the Pacific Northwest experienced a severe and unprecedented drought causing electric power resources and generating capabilities of Seattle City Light to drop to a critically low and dangerous level. To meet the shortage, City Light purchased power from outside sources. The cost of this by April of 1977 was $4,700,000. If the drought continued, necessary purchases of outside power would cost $21,000,000 by the end of that year, and, without immediate additional revenue, the financial stability of City Light would be impaired. To obtain additional revenue to meet this emergency, the surcharge ordinance was passed.

The first question concerns the retroactive effect of the ordinance. The class representatives argue that the electricity consumed during April and May was furnished at a price then set so that the terms of the contract between City Light and its customers became fixed. Each party's rights, therefore, became vested. By imposing a surcharge for April and May deliveries, one of the terms (price) was altered retroactively, impairing the obligation of contract. U.S. Const. art. 1, § 10; Const. art. 1, § 23; *Ruano v. Spellman*, 81 Wn.2d 820, 825, 505 P.2d 447 (1973).

Authority to impose rates is found in RCW 35.92.050 which gives the City

> full authority to regulate and control the use, distribution, and price [of electricity] . . .

The rates must be just, fair, reasonable and sufficient, RCW 80.28.010, and may be fixed unilaterally for future deliveries unless prevented by contract. *United Gas Pipe Line Co. v. Memphis Light, Gas & Water Div.*, 358 U.S. 103, 113, 3 L. Ed. 2d 153, 79 S. Ct. 194 (1958). *See Scott Paper Co. v. Anacortes*, 90 Wn.2d 19, 578 P.2d 1292 (1978).

As to past deliveries, the following rule applies:

> A statute may not be given retroactive effect, regardless of the intention of the legislature, where the effect

would be to interfere with vested rights. Thus, a statute may not operate retroactively where the result would be to impair the obligation of a contract . . . or deprive one of his property without due process of law . . .

(Citation omitted.) *Gillis v. King County,* 42 Wn.2d 373, 376, 255 P.2d 546 (1953).

The trial court found:

City Light is in a contractual relationship with its customers. Under such contract, the City has agreed to supply and the customer has agreed to pay for electricity under the rates, terms and provisions prescribed from time to time by ordinance.

Finding of fact No. 9.

When the electricity was consumed by City Light's customers, the obligation to pay therefor was fixed by the rates prescribed. Those rates could not be altered unilaterally unless, possibly, by an exercise of the police power to safeguard a vital interest of the people. *Scott Paper Co. v. Anacortes, supra* at 36–37, citing with approval *Home Bldg. & Loan Ass'n v. Blaisdell,* 290 U.S. 398, 437, 78 L. Ed. 413, 54 S, Ct. 231, 88 A.L.R. 1481 (1940). No such vital interest of the people was found to exist in this case. Accordingly, it was improper to collect the surcharge for electricity delivered in April and May of 1977.

The next question is whether, as requested by the class representatives,

the substantial interests of the Plaintiff class be re-instated and made whole by an immediate reparation of surcharges made by the City of Seattle.

It is undisputed, as the court found, that because of the drought City Light was in dire need of additional revenue. *Critical and dangerous financial conditions existed at City Light.* Under RCW 35.92.050, the City had full authority, and, under the facts, very good reason to increase the rates by a surcharge or otherwise. There was only one source for this revenue, the 245,000 residential and 30,000 commercial customers of City Light who are the members of the class seeking the refund. The trial court found that:

The costs to make the refund would be burdensome on the utility and ultimately burdensome to the consumer, especially viewed in light of the average refund amount applicable to each customer.

Finding of fact No. 21.

■ The class representatives have placed the members of the class in an impossible, losing situation. If the judgment is reversed, members of the class will be required to repay through increased electricity rates the surcharges they are reimbursed for plus the costs of making such reimbursement, found by the court to be a significant sum, and the costs of the litigation. The trial court acted well within its discretion in sparing the members of the class the additional burden. *King County Water Dist. 75 v. Seattle,* 89 Wn.2d 890, 577 P.2d 567 (1978).

The other questions are insubstantial. The judgment of the trial court is affirmed. Each party shall bear his own costs.

CALLOW, C.J., concurs.

RINGOLD, J., (concurring)—I join the court's opinion except for the discussion of the costs of a refund. The defendant's economic power to transfer the long range burden of a judgment to the class of plaintiffs should not shield the defendant from a present liability. I, nonetheless, concur in the result because the trial court's unchallenged findings of fact demonstrate that the class representatives did not prove damages.

Finding of fact No. 11 provides:

As it turned out, despite the differing billing cycles and differing usages of electricity during the six months surcharge period, by-monthly customers neither benefitted nor were damaged by being at the beginning or end of the surcharge billing period; both classes of customers averaged nearly the same surcharge billing.

224

This finding is a rejection of a claim that the increase had an inequitable impact on customers, but it also demonstrates that even those customers paying maximum retroactive surcharges suffered no appreciable harm. Finding of fact No. 21, quoted in the court's opinion read in light of finding of fact No. 11 is also a finding of no monetary harm.

These findings are unchallenged by assignment of error: I, therefore, concur because the class representatives failed to prove damages at trial.

Reconsideration denied June 27, 1980.

Review denied by Supreme Court November 7, 1980.