[No. 7810–8–III. Division Three. December 18, 1986.]

CHICAGO BRIDGE & IRON COMPANY, *Appellant*, v.
THE DEPARTMENT OF LABOR AND INDUSTRIES,
ET AL, *Respondents*.

*Kristine Chrey* and *Witherspoon, Kelley, Davenport &
Toole,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Maureen
A. Mannix, Assistant,* for respondents.

GREEN, C.J.—Chicago Bridge & Iron Company (CBI), a self–insured employer, appeals an order denying it second injury fund relief and requiring CBI to deposit into the pension reserve fund 100 percent of Rex T. Nissen's pension. The issue presented is whether a self–insured employer is entitled to second injury fund relief when one of its employees becomes permanently and totally disabled from the combined effects of three injuries, two of which occurred prior to certification of the employer as a self–insurer, and the other injury occurring after certification of self insurance, but before the 1977 amendment to the Industrial Insurance Act which expressly provides self–insured employers with second injury fund benefits.

Mr. Nissen is a 61–year–old male who throughout his adult life engaged in heavy physical labor in the construction industry. He has suffered three major injuries: (1) May 11, 1940, he crushed his fourth, fifth, sixth, and seventh cervical vertebrae in a rodeo accident; (2) October 7, 1957, his eighth and ninth cervical vertebrae were crushed when he threw a 50–pound toolbox onto his shoulder while working in Montana; and (3) February 25, 1974, he developed severe, chronic psychogenic pain disorder and severe retroactive depression with suicidal ruminations from an accident which occurred during the course of his employment at Coulee Dam for CBI. A co–worker was killed in this accident.

After his last injury, Mr. Nissen applied for benefits with the Department of Labor and Industries (DLI). The claim was allowed and in June 1975 closed with an award for 20 percent permanent partial disability. The claim was reopened and closed several times thereafter. On August 24, 1982, DLI issued an order finding that due solely to conditions related to the February 25, 1974 injury, Mr. Nissen was permanently and totally disabled. On the same day, DLI issued a separate order directing CBI to transmit to DLI 100 percent of the reserve amount required to pay the pension. CBI, a self–insured employer since 1971, appealed.

On November 2, 1983, the Board of Industrial Insurance

Appeals concluded that due to the combined effect of his 1940, 1957, and 1974 injuries, Mr. Nissen was permanently totally disabled. It affirmed DLI's order requiring CBI to deposit into the pension reserve fund 100 percent of Mr. Nissen's pension, which in effect denied CBI second injury fund relief. On December 6, 1983, CBI appealed the Board's decision which was affirmed by the Okanogan Superior Court. CBI's direct appeal to the Supreme Court was transferred to this court for disposition. We affirm.

For many years prior to 1971, all employers in the state of Washington were state insured. During that time, RCW 51.16.120 established and there existed a "second injury fund". Premiums were paid to the accident fund by employers and a portion transferred to the second injury fund. The purpose of the fund was to relieve employers from the full financial responsibility for an employee's permanent total disability or death resulting from the combined effect of a previous injury or disability and an on-the-job injury. *T.I.M.E.-D.C. v. Schuirman,* 42 Wn. App. 607, 609, 711 P.2d 1116, *review denied,* 105 Wn.2d 1014 (1986). This provision encouraged the hiring of previously handicapped workers by limiting the liability of the second employer to disabilities incurred on the job for that employer. *Jussila v. Department of Labor & Indus.,* 59 Wn.2d 772, 370 P.2d 582 (1962).

In 1971, RCW 51.14 was enacted allowing qualified employers to elect to become self–insurers, thus permitting them to manage their own industrial insurance matters including authorization of medical care and payment of compensation. RCW 51.14.030. Immediately thereafter, CBI made such election. No provision was made for self–insured employers to participate in the second injury fund. Subsequently, on July 1, 1977, RCW 51.16.120 and RCW 51.44.040 were amended to allow second injury fund relief for self–insurers. Since the amendment, RCW 51.16.120(1) provides that where a previously disabled employee suffers a further on–the–job injury and the combined effects of the injuries result in permanent total disability, "a self–insured

employer shall pay directly into the reserve fund only the accident cost which would have resulted solely from said further injury or disease . . ."; and RCW 51.44.040(3) provides an assessment for the second injury fund shall be imposed on self–insurers to ensure they pay into the fund in proportion to the payments made from the fund on account of claims made against them. Until these amendments were effective, the second injury fund was financed by premiums paid by employers into the accident fund on the basis of their experience rating. RCW 51.44.040. Only state–insured employers paid into the accident fund and DLI was only required to maintain "experience ratings" on state–insured employers. Thus, for the period 1971 through 1977, CBI was not required and did not make any contributions to the accident or second injury funds. Notwithstanding, CBI contends it is entitled to second injury fund relief.

■ In *T.I.M.E.–D.C. v. Schuirman, supra,* this identical issue was raised and decided contrary to CBI's position. T.I.M.E.–D.C., the employer, elected to be a self–insurer. Schuirman, the worker, became permanently totally disabled as a result of a combination of his 1959 and 1977 injuries which occurred prior to the 1977 amendment to the Industrial Insurance Act. The trial court directed DLI to provide second injury fund relief. The appellate court reversed, holding at page 610:

> By withdrawing from the established scheme of funding workmen's compensation benefits by regular payment of premiums and becoming a self–insurer, T.I.M.E.–D.C. removed itself from coverage. Because it did not pay into the second injury fund, it acquired no right to benefit therefrom.

The Supreme Court denied review in *T.I.M.E.–D.C. v. Schuirman, supra,* and a companion unpublished decision, *Allied Stores, Inc. v. Department of Labor & Indus.,* 42 Wn. App. 1054, *review denied,* 105 Wn.2d 1016 (1986). In light of the decision in *T.I.M.E.–D.C.,* we hold CBI is not entitled to second injury fund relief.

Neither do we accept CBI's contention that the amendments to RCW 51.44.040 and RCW 51.16.120 are retroactive. To permit retroactive application of these amendments in order to allow CBI access to the second injury fund when it had not paid into either it or the accident fund would arguably interfere with the interests of state–insured employers who had contributed to the funds. *Hearde v. Seattle*, 26 Wn. App. 219, 221–22, 611 P.2d 1375 (1980). Further, it would allow payments from a fund to which CBI had not regularly contributed—contrary to the provisions providing for funding.

CBI next contends it will be denied equal protection of the law if it is not given second injury fund relief for Mr. Nissen's prior injuries. CBI argues there is no reasonable basis for classifying self–insured employers differently than state–insured employers for purposes of administering the second injury fund. We disagree.

 The constitutional safeguards for equal protection are offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. *Haddenham v. State*, 87 Wn.2d 145, 150, 550 P.2d 9 (1976). A legislative enactment is presumptively valid, *Haddenham*, at 150, and the party challenging a classification bears a heavy burden of proving it is unreasonable. *State ex rel. Graham v. San Juan Cy.*, 102 Wn.2d 311, 322, 686 P.2d 1073 (1984). Classifications may not be "'manifestly arbitrary, unreasonable, inequitable, and unjust'"; instead reasonable grounds must exist for making the distinction between those within and those without the class. *Johnson v. Tradewell Stores, Inc.*, 95 Wn.2d 739, 744, 630 P.2d 441 (1981) (quoting *State ex rel. O'Brien v. Towne*, 64 Wn.2d 581, 583, 392 P.2d 818 (1964)). This is called the rational basis test. Use of the test involves a 3–step inquiry: whether (1) the classification applies alike to all members within the designated class; (2) some basis in reality exists for reasonably distinguishing between those within and without the designated class; and (3) the challenged classifications have any rational relation to the purposes of the

challenged statute. *Myrick v. Board of Pierce Cy. Comm'rs,* 102 Wn.2d 698, 701, 677 P.2d 140, 687 P.2d 1152 (1984). The rational relationship test must be applied here. *See Johnson v. Tradewell Stores, Inc., supra; Sanchez v. Department of Labor & Indus.,* 39 Wn. App. 80, 88–89, 692 P.2d 192 (1984).

Applying that test, we find: Step 1—all self–insured employers are treated alike. None could receive second injury fund relief for employees injured between 1971 and 1977. Step 2—the distinction between self–insured and state–insured employers is (a) self–insured employers choose to be classified as such voluntarily, (b) self–insured employers have not paid into the second injury fund, and (c) by definition "self–insurer" means that the employer will be responsible for any injuries to the employees. Step 3—the purpose of the statute allowing employers to become self–insurers is to give employers a choice. Thus, we conclude there is a reasonable basis for distinguishing between state–insured and self–insured employers and CBI has not been denied equal protection of the law.

CBI further contends DLI has deprived it of a significant property interest by denying it access to the second injury fund for accident costs attributable to Mr. Nissen's preexisting injuries without giving CBI any prior notice of its intent. CBI also argues it had an accrued vested interest in the second injury fund during 1971–77 for contributions made prior to 1971. We disagree.

▮ CBI's first argument with respect to notice is without merit. The wording of the former RCW 51.16.120 is clear that the second injury fund was financed by premiums paid by employers into the accident fund on the basis of their experience rating. As stated before, only state–insured employers paid into the accident fund and were rated for their experience. When CBI chose to become a self–insurer, it removed itself from the benefits and coverage provided by the statutory scheme of funding workers' compensation. *T.I.M.E.–D.C. v. Schuirman, supra* at 610. There is a presumption one knows the law, and adequate notice of statu-

tory provisions is present when a sufficient amount of time has passed since its enactment. *Department of Ecology v. Abbott,* 103 Wn.2d 686, 694 P.2d 1071 (1985). Mr. Nissen's injury occurred nearly 3 years after RCW 51.14 was enacted allowing qualified employers to become self–insurers, and he was declared by DLI to be permanently totally disabled in 1982, 11 years after the statute was enacted.

Finally, CBI contends it had a vested property interest in the second injury fund because it had paid its fair share into the fund, and since it was subject to assessments for the fund between 1971 and 1977, it should not be penalized because the State failed to assess self–insured employers during that period of time. CBI supports this position based on RCW 51.14.020(4):

> If the employer seeking to qualify as a self–insurer has previously insured with the state fund, the director shall require the employer to make up his or her proper share of any deficit or insufficiency in the state fund as a condition to certification as a self–insurer.

We disagree. The payment required by this statute from an employer seeking to become a self–insurer does not constitute a payment into the fund for coverage of future injuries; rather it requires an employer to make up for any existing deficits in its account with the state fund before it can become a self–insurer. Thus, contrary to CBI's argument, the payment it made when it elected to become a self–insurer was not for the purpose of providing second injury fund relief after it became a self–insurer.

Furthermore, this provision did not require CBI to pay into the second injury fund between the years of 1971 and 1977. As stated previously, RCW 51.44.040(2) provided that payments to the second injury fund were to be made from the "accident fund". Only state–insured employers contribute to the accident fund. Thus, from 1971 until 1977, when the Legislature amended RCW 51.44.040 to include assessments upon self–insured employers for the second injury fund, such employers did not contribute to the fund and the state treasury did not have authority to assess self–

insured employers for contributions to that fund. Thus, we hold CBI has not been deprived of a significant property interest in violation of its constitutional due process rights.
Affirmed.

McINTURFF and THOMPSON, JJ., concur.

Review denied by Supreme Court March 3, 1987.