[No. 23774-8-I.   Division One.   February 26, 1990.]

SEATTLE SCHOOL DISTRICT No. 1, *Appellant,* v. THE
DEPARTMENT OF LABOR AND INDUSTRIES,
*Respondent.*

---

[13]*Weber v. Biddle*, 72 Wn.2d 22, 431 P.2d 705 (1967).

*Philip A. Talmadge, Talmadge & Friedman, Robert G. Nylander,* and *Karr Tuttle Campbell,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *Thornton Wilson, Assistant,* for respondent.

WINSOR, J.— Seattle School District No. 1 (District) appeals from a judgment entered in Superior Court upholding an order issued by the Board of Industrial Insurance Appeals (Board) for the Department of Labor and Industries (Department). The order denied the District, a self–insured employer, its request for second injury fund relief. We reverse.

The parties do not dispute the facts. Rose Fears, a District employee, sustained a back injury in the course of her employment on June 1, 1977. After the accident, Fears filed an industrial insurance claim. The Department closed the claim in 1978 without making a permanent partial disability award. The District rehired Fears sometime after July 1, 1977.

In 1980, Fears filed an application to reopen her disability claim due to aggravation of the back condition. The Department denied Fears' application, but she appealed to

the Board. After a series of appeals, on April 14, 1982, Fears was eventually awarded permanent partial disability equal to 25 percent as compared to total bodily impairment.

Fears also had a psychiatric disability that existed prior to her industrial injury of June 1, 1977.[1] She suffered a worsening of this preexisting condition between April 14, 1982, and May 30, 1984. Because of the worsening of this condition, on May 2, 1983, Fears applied to reopen her claim for disability aggravation. After another series of appeals, the Department entered an order on April 8, 1985, adjudging Fears permanently and totally disabled as of March 3, 1983, and placing her on the pension rolls effective that date. Fears' total disability was found to be caused by the combined effect of her industrial injury of June 1, 1977, and her psychiatric disability. Neither condition alone would have been sufficient to cause her total disability.

When Fears was placed on the pension rolls, the District requested an award of second injury fund relief pursuant to RCW 51.16.120. The Department denied the request April 8, 1985. The District appealed to the Board, which upheld the Department's order. Upon further appeal, the Superior Court affirmed the decisions of the Board and the Department. This appeal followed.

The second injury fund statute, part of the Industrial Insurance Act, provides that in situations in which a previously disabled employee suffers an on–the–job injury and the combined effect of the previous disability and the injury results in total and permanent disability, the employer pays into the fund only the accident cost that would have resulted exclusively from the on–the–job injury, as if there had not been the previous disability. RCW

---

[1]At oral argument, the Department argued that the psychological condition prior to June 1977 was not a "disability". However, the undisputed findings of fact state that "Rose Fears had a psychiatric disability that existed before her industrial injury of June 1, 1977." The Department has not challenged this finding of fact, and it is therefore treated as a verity on appeal. *Metropolitan Park Dist. v. Griffith*, 106 Wn.2d 425, 433, 723 P.2d 1093 (1986).

51.16.120; *Chicago Bridge & Iron Co. v. Department of Labor & Indus.*, 46 Wn. App. 252, 254–55, 731 P.2d 1 (1986), *review denied*, 107 Wn.2d 1032, *cert. denied*, 484 U.S. 823, 98 L. Ed. 2d 48, 108 S. Ct. 87 (1987). The purpose of the fund is to encourage the hiring or continued employment of handicapped workers. *Jussila v. Department of Labor & Indus.*, 59 Wn.2d 772, 778, 370 P.2d 582 (1962).

Prior to 1971, all employers in the state of Washington were state–insured under the workers' compensation statute. All employers were entitled to second injury fund relief, as provided for in RCW 51.16.120, by virtue of paying premiums into the general accident fund. *Chicago Bridge*, 46 Wn. App. at 254. A portion of those premiums was transferred into the second injury fund.

In 1971, RCW Title 51 was amended by the Legislature to allow qualified employers to elect to become self–insured, thus permitting them to manage their own industrial insurance matters. Laws of 1971, 1st Ex. Sess., ch. 289. *Chicago Bridge*, 46 Wn. App. at 254. At the time of the amendments, the Legislature did not make any provision for self–insured employers to participate in the second injury fund.

In 1977, however, the Legislature amended RCW 51.16-.120 to allow second injury fund relief to self–insurers. Laws of 1977, 1st Ex. Sess., ch. 323, § 13, p. 1239; *see Chicago Bridge*, 46 Wn. App. at 254. Under the present scheme, self–insured employers pay directly into the second injury fund the accident cost that would have resulted solely from the on–the–job injury. Further, RCW 51.44.040(3) requires self–insurers to pay an assessment to ensure they pay into the fund in proportion to the payments made from the fund to satisfy claims against that employer.

The net result of these legislative changes was that between 1971 and July 1, 1977, only state–insured employers paid into the second injury fund. *Chicago Bridge*, 46 Wn. App. at 255. Therefore, during the period from 1971 to July 1, 1977, self–insurers made no contributions to the

accident or second injury funds. Because of this 6–year gap, the Washington State Court of Appeals has twice held that RCW 51.16.120 does not provide coverage to self–insured employers for employee injuries sustained prior to July 1, 1977. *Chicago Bridge,* 46 Wn. App. at 255; *T.I.M.E.–D.C. v. Schuirman,* 42 Wn. App. 607, 610, 711 P.2d 1116, *review denied,* 105 Wn.2d 1014 (1986).

On appeal, the District contends that RCW 51.16.120 entitles it to second injury fund relief because the District's claim ripened after the 1977 amendments took effect. Both the District and the Department ask us to award attorney fees.

### I

The District argues. that its claim ripened in 1983, long after the 1977 amendments went into effect, thus, the District should be eligible for second injury fund relief. We agree.[2]

■ RCW 51.16.120 provides that the second injury fund is available to an employer whenever

a worker has a previous bodily disability from any previous *injury* or disease, whether known or unknown to the employer, and shall suffer a further disability from *injury* or occupational disease in employment covered by this title and *become totally and permanently disabled from the combined effects thereof* . . ..

(Italics ours.) Fears' psychiatric disability, which existed prior to June 1, 1977, qualifies as the first injury (or disease) mentioned in the statutory language above.[3] Fears' June 1, 1977, back injury qualifies as the second injury—an injury in employment covered by the Industrial Insurance

---

[2]We apply a de novo standard of review, as the question at issue, construction of a statute, is purely one of law. *N.A. Degerstrom, Inc. v. Department of Labor & Indus.,* 25 Wn. App. 97, 102, 604 P.2d 1337, *rev'd on other grounds sub nom. Westinghouse Elec. Corp. v. Department of Labor & Indus.,* 94 Wn.2d 875, 621 P.2d 147 (1980); *see* RCW 51.52.140.

[3]The statute does not require that the "previous bodily disability" be caused by or occur during employment. It may result from "any previous injury or disease, whether known or unknown to the employer". RCW 51.16.120.

Act. Permanent total disability occurred after Fears successfully litigated an aggravation claim, and became effective March 3, 1983.

The question at the heart of this dispute is whether coverage under the second injury fund is triggered by the June 1, 1977, "second injury" or by the 1983 total disability. In the usual case, those events are simultaneous. *See Chicago Bridge,* 46 Wn. App. at 253; *T.I.M.E.–D.C.,* 42 Wn. App. at 608. Here, however, they were not: Fears suffered a worsening of her psychiatric condition between April 1982 and May 1984, which resulted in her total and permanent disability. Immediately after the June 1977 back injury, Fears was not totally and permanently disabled; in fact, she was rehired by the District sometime after July 1, 1977.

Contrary to the Department's argument, this case is not analogous to *T.I.M.E.–D.C.,* 42 Wn. App. at 607. In *T.I.M.E.–D.C.,* the claimant was injured in 1959 and again on March 25, 1977. In 1980, he received a 30 percent permanent partial disability award. He appealed and eventually got a permanent total disability award. The Board found that the claimant was permanently totally disabled because of the combination of the 1959 and 1977 injuries. No aggravation or worsening of condition was involved.

The parties litigated the second injury fund relief issue, as T.I.M.E.–D.C. was a self–insurer. The Court of Appeals found that the employer was not entitled to second injury fund relief. Since it did not pay into the fund at the time his claim arose in March 1977, it acquired no right to benefit from the fund. *T.I.M.E.–D.C.,* 42 Wn. App. at 610.

The distinguishing factor in this case is that the permanent total disability was caused in part by, and did not exist until, Fears' postamendment (July 1, 1977) worsening of her psychiatric condition. Fears filed to reopen the aggravation claim in 1982 after a worsening of the psychiatric disability. That claim was granted and Fears was found totally and permanently disabled as of March 3, 1983. In order to prevail on the aggravation claim, Fears

had to present medical evidence showing that an aggravation of the industrial injury resulted in *increased* disability. *Lewis v. ITT Continental Baking Co.,* 93 Wn.2d 1, 3, 603 P.2d 1262 (1979); *Phillips v. Department of Labor & Indus.,* 49 Wn.2d 195, 197, 298 P.2d 1117 (1956). Fears did so. The increase in disability caused by the worsening of the psychiatric condition resulted in permanent and total disability. Therefore, unlike the employee in *T.I.M.E.–D.C.,* Fears was not permanently disabled until well after the 1977 amendment went into effect.

Likewise, *Chicago Bridge,* another case relied on by the Department, is distinguishable. There the claim arose out of pre–1977 injuries that caused total permanent disability before the amendment of the act. The question was whether a self–insured employer was entitled to second injury fund relief when an employee became totally and permanently disabled as a result of three injuries, all occurring prior to July 1, 1977. The employer argued that RCW 51.16.120 should apply retroactively to provide coverage, but the court disagreed, finding that retroactive coverage would allow the employer access to a fund to which it had not contributed. *Chicago Bridge,* 46 Wn. App. at 256.

In this case, Fears could not have established permanent total disability without the worsening of her psychiatric condition. By the time Fears became totally disabled in 1983, the District had paid into the fund for nearly 6 years. Therefore, unlike the claims of the employers in *T.I.M.E.–D.C.* and Chicago Bridge, the District's claim does not seek to access a fund to which the District did not contribute at the time the triggering event, the total disability, occurred.

■ We find that the plain language of the statute establishes three prerequisites to second injury fund relief: a preexisting injury (or disease), an industrial injury, and permanent total disability as a result of those two injuries. In this case, one of the prerequisites, permanent total disability, occurred after the date of the amendments. Utilization of data or events antedating the effective date of a statute in a prospective operation of the statute does not

render the legislation retroactive. *Aetna Life Ins. Co. v. Washington Life & Disab. Ins. Guar. Ass'n,* 83 Wn.2d 523, 535, 520 P.2d 162 (1974). Before coverage under the statute can be triggered, all three events had to have occurred. The District's entitlement to relief did not accrue until 1983 when Fears was determined to be totally and permanently disabled. Therefore, we hold that as a matter of law, the District is entitled to coverage from the second injury fund.

Because we find that the District is entitled to coverage under a prospective application of the statute, we need not address the District's other arguments.

## II

The District claims that it is entitled to fees on the basis of RCW 51.52.130, which states:

> If, on appeal to the court from the decision and order of the board, said decision and order is reversed or modified and additional relief is granted to a worker or beneficiary, or in cases where a party other than the worker or beneficiary is the appealing party and the worker's or beneficiary's right to relief is sustained by the court, a reasonable fee for the services of the worker's or beneficiary's attorney shall be fixed by the court. . . .

■ The Washington Supreme Court has interpreted this statute to not allow recovery of attorney fees by employers in industrial insurance cases. *Harbor Plywood Corp. v. Department of Labor & Indus.,* 48 Wn.2d 553, 559–60, 295 P.2d 310 (1956); *see Pennsylvania Life Ins. Co. v. Department of Empl. Sec.,* 97 Wn.2d 412, 416–17, 645 P.2d 693 (1982). Accordingly, the District is denied attorney fees.

The order of the Superior Court affirming the order of the Board is reversed and remanded with directions to return the case to the Board to enter an order finding second injury fund coverage for the District.

COLEMAN, C.J., and RINGOLD, J. Pro Tem., concur.

Reconsideration denied April 17, 1990.

Review granted at 115 Wn.2d 1001 (1990).