[No. 57173–2. En Banc. February 7, 1991.]

SEATTLE SCHOOL DISTRICT NO. 1, *Respondent,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Petitioner.*

*Kenneth O. Eikenberry, Attorney General,* and *Nancy Thygesen Day, Assistant,* for petitioner.

*Philip A. Talmadge* (of *Talmadge Friedman & Cutler*), for respondent.

DOLLIVER, J.—Defendant, Department of Labor and Industries, seeks review of a Court of Appeals decision holding second injury fund relief available to plaintiff, Seattle School District, a self–insured employer. Defendant

contends plaintiff is not entitled to second injury fund relief since the injury in question occurred before second injury fund relief was extended to self–insured employers. Plaintiff challenges the statutory provisions awarding attorney fees only to an injured worker or beneficiary as unconstitutional.

The facts are not in dispute. On June 1, 1977, Rose Fears suffered an industrial back injury while in the employment of Seattle School District No. 1 (the District), a self–insured employer. Fears acted promptly to file an industrial insurance claim for the injury with the Department of Labor and Industries (the Department) in June 1977. On July 7, 1978, the Department issued an order closing the claim without any award for permanent partial disability. Fears was rehired by the District in a position other than the one she held at the time of the injury sometime after July 1, 1977.

On September 11, 1980, Fears filed an application to reopen her claim for aggravation of disability. On April 14, 1982, the Department again closed Fears' claim with a permanent partial disability award of 25 percent effective back to August 4, 1980.

Fears also suffers from a nonindustrial psychiatric condition which predated the 1977 back injury. Fears experienced a worsening of this psychiatric condition after April 14, 1982. On May 2, 1983, she filed a second application to reopen her claim for aggravation of disability. The Department reopened her claim, and on April 8, 1985, issued an order classifying Fears as a totally and permanently disabled worker effective as of March 3, 1983, and placed her on the pension rolls the same date. Fears' total disability was caused by the combined effect of the 1977 back injury and the preexisting psychiatric condition. Neither alone would have been sufficient to disable her completely.

On April 8, 1985, the Department also issued an order denying the District's request for second injury fund relief. The Department explained the injury covered by this claim occurred on June 1, 1977, and the provisions of RCW

51.16.120, which extend second injury fund relief to self–insured employers, did not become effective until July 1, 1977. The Department stated industrial insurance claims are governed by the law in effect at the time of the injury. The Department's decision was upheld by both the Board of Industrial Insurance Appeals (the Board) and the King County Superior Court.

The Court of Appeals reversed. *Seattle Sch. Dist. 1 v. Department of Labor & Indus.*, 57 Wn. App. 87, 786 P.2d 843 (1990). This appeal followed.

I

The critical issue before us is what event fixes an employer's *eligibility* for second injury fund relief. The Department argues the Court of Appeals improperly focused on when a claim for second injury fund relief matures and thereby tied eligibility for second injury fund relief to the time when the total and permanent disability becomes effective—in this case, March 3, 1983. The Department asserts eligibility for second injury fund relief is distinct from the elements establishing a mature claim for second injury relief and is properly fixed at the time of the industrial injury—in this case, June 1, 1977.

Prior to 1971, all employers in the state of Washington were State–insured under the workers' compensation statute. During that time, all employers were entitled to second injury fund relief under RCW 51.16.120 by virtue of each employer's compulsory payments into the general accident fund. A portion of each payment was automatically transferred into the second injury fund. The second injury fund statute provides that, when a previously disabled employee suffers an on–the–job injury and the combined effect of the previous disability and the injury results in total and permanent disability, the employer pays only the accident cost attributable exclusively to the industrial injury. The second injury fund covers the remainder. *Chicago Bridge & Iron Co. v. Department of Labor & Indus.*, 46 Wn. App. 252,

254–55, 731 P.2d 1 (1986), *review denied,* 107 Wn.2d 1032, *cert. denied,* 484 U.S. 823 (1987).

In 1971, RCW 51.14 was enacted to allow qualified employers to elect to become self–insurers. Laws of 1971, 1st Ex. Sess., ch. 289, § 27, p. 1562. The District elected to become such a self–insured employer. The statute made no provision to allow self–insured employers to participate in and contribute to the second injury relief fund. That self–insured employers were not covered under the 1971 version of the second injury fund statute is not challenged here. *See T.I.M.E.–D.C. v. Schuirman,* 42 Wn. App. 607, 610, 711 P.2d 116, *review denied,* 105 Wn.2d 1014 (1986).

In 1977, the Legislature acted to amend RCW 51.16.120 to extend second injury fund relief to self–insured employers. Laws of 1977, 1st Ex. Sess., ch. 323, § 13, p. 1239. Self–insured employers now make periodic payments into the second injury relief fund, and in the event of an injury to a previously disabled worker, pay the cost attributable to the on–the–job injury directly into the second injury fund. RCW 51.16.120; RCW 51.44.040(3).

RCW 51.16.120(1) now provides second injury fund relief is available to an employer

> [w]henever a worker has a previous bodily disability from any previous injury or disease, whether known or unknown to the employer, and shall suffer a further disability from injury or occupational disease in employment covered by this title and become totally and permanently disabled from the combined effects thereof . . ..

The Court of Appeals interpreted the "plain language" of RCW 51.16.120 to establish three prerequisites to a claim for second injury fund relief: a preexisting injury or disease, an industrial injury, and permanent total disability as a result of those two injuries. *Seattle Sch. Dist. 1,* 57 Wn. App. at 93. The court then went on to hold that, since second injury fund coverage was not triggered until the last of these events occurred, an employer's eligibility for coverage would not be fixed until that time. *Seattle Sch. Dist. 1,* 57 Wn. App. at 94.

The court's decision is directly at odds with *Chicago Bridge* which denied second injury fund relief to a self–insured employer. The court below attempted to distinguish *Chicago Bridge* by stating:

> There the claim arose out of pre–1977 injuries that *caused total permanent disability before the amendment of the act.*

(Italics ours.) *Seattle Sch. Dist. 1,* 57 Wn. App. at 93. However, the court's characterization of *Chicago Bridge* is not reflected in the text of *Chicago Bridge.* The court in that case merely states the injured worker's claim was closed in 1975 with an award of 20 percent permanent partial disability. The claim was then reopened a number of times until the worker was finally declared permanently and totally disabled in 1982 from the combined effects of the pre–1977 injuries. *Chicago Bridge,* 46 Wn. App. at 253. Nowhere in *Chicago Bridge* does it say the worker was totally and permanently disabled prior to the effective date of the 1977 amendment. In fact, the briefs of both parties in that case reveal agreement that the worker's total and permanent disability did not occur until January 8, 1979.

■■ The crucial difference between the case before us and *Chicago Bridge* is that the court in *Chicago Bridge* recognized the well established rule under the Industrial Insurance Act which fixes rights and liabilities on the date of the industrial injury. *Chicago Bridge,* 46 Wn. App. at 255 (citing *T.I.M.E.–D.C.,* 42 Wn. App. at 610). In its opinion in this case, the Court of Appeals, without explanation, completely overlooks this doctrine. It has long been the rule that the rights of parties under the workers' compensation statute are governed by the law in force at the time the injury occurred. *Ellis v. Department of Labor & Indus.,* 88 Wn.2d 844, 851 n.2, 567 P.2d 224 (1977); *Ashenbrenner v. Department of Labor & Indus.,* 62 Wn.2d 22, 25, 380 P.2d 730 (1963); *Bodine v. Department of Labor & Indus.,* 29 Wn.2d 879, 889, 190 P.2d 89 (1948). The injured worker's rights are fixed at the time of the original industrial injury regardless of whether there is a subsequent aggravation or worsening of the condition. *Ashenbrenner,* 62 Wn.2d at 25;

*Corak v. Department of Labor & Indus.*, 2 Wn. App. 792, 800–01, 469 P.2d 957 (1970) ("When aggravation resulting in increased disability is established, the compensation payable is fixed in accordance with the provisions in effect at the time of the injury.").

Although the majority of the precedents fixing rights at the date of the industrial injury deal with employee rights, the principle is equally applicable to employer liabilities. A recent Court of Appeals decision applied the "last injurious exposure rule" to a self–insured employer in holding the employer rather than the Department liable for an employee's injuries. The court stated:

> When an employee sustains a subsequent industrial injury which is found to be a "new" injury, the insurer at risk *at the time of the second injury* is liable for all of claimant's benefits.

(Italics ours.) *Champion Int'l, Inc. v. Department of Labor & Indus.*, 50 Wn. App. 91, 93–94, 746 P.2d 1244 (1987) (quoting 4 A. Larson, *Workmen's Compensation* § 95.21 (1984)). Here, the injured worker's rights and benefits were fixed as of the date of her injury, June 1, 1977. Those benefits could neither be increased nor diminished by subsequent legislative or departmental action. Thus, the liability for those benefits should be similarly fixed at the time of the injury. To do otherwise would be to allow the District to benefit from a fund to which it had not contributed. *See Chicago Bridge*, 46 Wn. App. at 256. In determining whether the second injury fund may be used by the employer, the crucial date is when the injury occurred to the employee, not when relief to the employee is afforded by the Department.

Even so, the District asserts its right to second injury fund relief based on two theories. First, it argues principles of statutory interpretation applicable to the Industrial Insurance Act require this court to construe the statute in favor of coverage by fixing eligibility for second injury fund relief as late as possible. Second, the District argues the

language of the 1977 amendment renders second injury fund relief available in all pending cases.

■ The District claims the Industrial Insurance Act demands a liberal construction in favor of coverage. However, the District's argument overlooks the consistent focus of liberal construction, which is on employees rather than employers. RCW 51.04.010 declares "sure and certain relief *for workers, injured in their work, and their families and dependents* is hereby provided regardless of questions of fault". (Italics ours.) Similarly, RCW 51.12.010 provides:

> This title shall be liberally construed for the purpose of reducing to a minimum the suffering and economic loss arising from injuries and/or death occurring in the course of employment.

While the precedents cited by the District do establish a policy of liberal construction, the decisions all concern the rights of the employee, not the employer.

> [T]he guiding principle in construing provisions of the Industrial Insurance Act is that the Act is remedial in nature and is to be liberally construed in order to achieve its purpose of providing compensation to all covered *employees* injured in their employment . . ..

(Italics ours.) *Dennis v. Department of Labor & Indus.,* 109 Wn.2d 467, 470, 745 P.2d 1295 (1987); *see also Bolin v. Kitsap Cy.,* 114 Wn.2d 70, 72, 785 P.2d 805 (1990); *Sacred Heart Med. Ctr. v. Carrado,* 92 Wn.2d 631, 635, 600 P.2d 1015 (1979); *Scott v. Department of Labor & Indus.,* 77 Wn.2d 888, 890, 468 P.2d 440 (1970).

The injured worker's right to benefits is not at issue in this case. Fears will receive her benefits regardless of the outcome here. *See Champion Int'l, Inc.,* 50 Wn. App. at 93. The only issue here is whether the District will be liable for the entire disability. The doctrine of liberal construction is inapplicable in the context of this case.

The District next points to the language of the 1977 amendment, which states:

> The department shall pass upon the application of this section in *all cases* where benefits are paid for total permanent disability . . ..

(Italics ours.) RCW 51.16.120(1). According to the District, this language manifests a legislative intent to make second injury fund relief available in all cases in which a person had not yet been determined to be totally and permanently disabled. The District relies on *Nelson v. Department of Labor & Indus.*, 9 Wn.2d 621, 626–27, 115 P.2d 1014 (1941). *Nelson* interpreted an Industrial Insurance Act amendment reference to "all appeals" to apply even to appeals pending at the effective date of the amendment.

██ The District argues that if the Legislature intended the amendment to apply only to subsequent injuries, it would have expressly said so. There are two responses to this argument. First, RCW 51.16.120(1) defines the distribution procedures for second injury fund relief. The Legislature used the term "all cases" to make clear it was the Department who was to administer those procedures and make the decisions in all cases, self–insured or otherwise. Second, since the Legislature is presumed to be familiar with judicial interpretations of prior statutes, *Ashenbrenner*, 62 Wn.2d at 26, it is presumed to have been aware of the well established rule fixing industrial insurance rights at the time of the industrial injury. The silence of the Legislature as to whether pending cases were to be included creates a presumption of acquiescence in the prevailing judicial construction. We note the Legislature is perfectly able to designate an effective date other than a date of the injury when it chooses to do so. *See, e.g.,* RCW 51.32.250 (funds for job modification costs are available "regardless of the date of industrial injury").

## II

Although the District successfully reversed the Board's decision in the Court of Appeals, the court denied the District's request for attorney fees. *Seattle Sch. Dist. 1 v. Department of Labor & Indus.*, 57 Wn. App. 87, 94, 786 P.2d 843 (1990). The established interpretation of the Industrial Insurance Act attorney fees provision, RCW 51.52.130, limits the recovery of attorney fees to injured

workers and beneficiaries who successfully obtain reversal or modification of Board decisions and denies any such recovery for attorney fees to employers. *Pennsylvania Life Ins. Co. v. Department of Empl. Sec.*, 97 Wn.2d 412, 416–17, 645 P.2d 693 (1982). The District now challenges this distinction as a violation of its constitutional right to equal protection.

■■ The equal protection clause of the Fourteenth Amendment and the privileges and immunities clause of Const. art. 1, § 12 are substantially identical and have been so regarded by this court. *American Network, Inc. v. Utilities & Transp. Comm'n*, 113 Wn.2d 59, 77, 776 P.2d 950 (1989). The fundamental requirement of equal protection under both the federal and state constitutions is that persons similarly situated with respect to the legitimate purpose of the law receive like treatment. *Harmon v. McNutt*, 91 Wn.2d 126, 130, 587 P.2d 537 (1978). In reviewing a challenge to a legislative classification where the classification involves neither suspect criteria nor affects fundamental interests, the court will engage only in the minimal scrutiny required by the "rational basis" test. *American Network, Inc.*, 113 Wn.2d at 77–78. The rational basis test carries a strong presumption of constitutionality and grants the Legislature wide discretion in creating classifications. *American Network, Inc.*, 113 Wn.2d at 78; *Johnson v. Tradewell Stores, Inc.*, 95 Wn.2d 739, 744, 630 P.2d 441 (1981). A statutory classification survives equal protection scrutiny under the rational basis test so long as (1) the classification applies equally to all members of the designated class; (2) reasonable distinctions exist between those within and those outside the class; and (3) the classification bears a rational relationship to the purpose of the legislation. *Paulson v. County of Pierce*, 99 Wn.2d 645, 653, 664 P.2d 1202, *appeal dismissed*, 464 U.S. 957 (1983).

■ The party assailing the classification bears the burden of proving the classification lacks any rational basis and is essentially arbitrary. If the court can reasonably

conceive any state of facts which will sustain the classification, it will be sustained. *State v. Persinger,* 62 Wn.2d 362, 368, 382 P.2d 497 (1963), *appeal dismissed, cert. denied,* 376 U.S. 187 (1964); *see also Washington Educ. Ass'n v. Smith,* 96 Wn.2d 601, 609, 638 P.2d 77 (1981). The District fails to carry the burden of proof on its allegation of an equal protection violation. The District interprets RCW 51.52.130 to establish two requirements for the recovery of attorney fees: (1) the reversal or modification of a Board decision, and (2) a resulting impact on the accident fund. The District argues there is no rational basis to distinguish employees and employers who obtain such a reversal or modification of a Board decision.

The District's argument fails to recognize the fundamental principle of the equal protection doctrine "that persons *similarly situated with respect to the legitimate purpose of the law* receive like treatment." (Italics ours.) *Harmon,* 91 Wn.2d at 130. As we have noted, the paramount objective of the Industrial Insurance Act is to protect individual employees. *Dennis,* 109 Wn.2d at 470; *see also Carnation Co. v. Hill,* 115 Wn.2d 184, 796 P.2d 416 (1990); *Johnson,* 95 Wn.2d at 743. The focus on protection of the individual employee is even more acute with respect to the attorney fees provision.

> The very purpose of allowing an attorney's fee in industrial accident cases primarily was designed to guarantee the injured workman adequate legal representation in presenting his claim on appeal without the incurring of legal expense or the diminution of his award . . ..

*Harbor Plywood Corp. v. Department of Labor & Indus.,* 48 Wn.2d 553, 559, 295 P.2d 310 (1956) (quoting *Boeing Aircraft Co. v. Department of Labor & Indus.,* 26 Wn.2d 51, 57, 173 P.2d 164 (1946)).

Employers and employees are not similarly situated with respect to the purpose of the Industrial Insurance Act attorney fee provision. Employees are allowed to recover attorney fees in order to avoid diminution of their award. *Harbor Plywood,* 48 Wn.2d at 559. The individual employee

receives an award to compensate the employee for *personal injuries.* Moreover, such injuries often involve permanent disabilities which render the employee financially dependent on such awards. Therefore, attorney fees may have a substantial adverse impact on the employee. By contrast, employers are not incapacitated and may simply treat attorney fees expended in industrial insurance actions as a cost of doing business, passing the cost on to the ultimate consumer. Disabled employees have no such option. Equal protection does not require identical treatment of people who are in fact different. "Equal protection requires equal treatment; it does not make people equal." *In re Ayers,* 105 Wn.2d 161, 167, 713 P.2d 88 (1986).

The attorney fees provision of the Industrial Insurance Act treats all employees equally and excludes employers based on real differences between the position of employers and employees related to the purpose of the provision. The District's equal protection challenge is rejected.

We reverse the Court of Appeals on the issue of second injury fund relief for the plaintiff, Seattle School District, and affirm its holding on attorney fees.

DORE, C.J., UTTER, BRACHTENBACH, ANDERSEN, DURHAM, and GUY, JJ., and CALLOW, J. Pro Tem., concur.