SIOUX FALLS SCHOOL DISTRICT,
Appellant,

v.

SOUTH DAKOTA SUBSEQUENT
INJURY FUND, Appellee.

No. 18105.

Supreme Court of South Dakota.

Considered on Briefs April 20, 1993.

Decided Aug. 4, 1993.

Susan Jansa Brunick, Davenport, Evans, Hurwitz & Smith, Sioux Falls, for appellant.

Mark Barnett, Atty. Gen., Gary Campbell, Asst. Atty. Gen., Pierre, for appellee.

WUEST, Justice.

The Sioux Falls School District appeals a circuit court decision affirming the South Dakota Department of Commerce and Regulation, Division of Insurance which denied a claim against the South Dakota Subsequent Injury Fund. We affirm.

FACTS

The South Dakota Subsequent Injury Fund (SIF) is a fund created under South Dakota worker's compensation law to encourage employers to hire or retain disabled or handicapped workers. *See generally* 2 Larson, Worker's Compensation Law, § 59.30 (1992). When a previously injured employee sustains additional injury, an employer may receive reimbursement from the SIF for excess compensation paid to the employee which would not have been necessary had the employee not had a pre-existing injury. SDCL 62–4–34. The fund is financed by assessments of worker's compensation insurance carriers and self-insurers. SDCL 62–4–35.

The Sioux Falls School District (District) dropped worker's compensation insurance and joined the Associated School Boards of South Dakota, Worker's Compensation

Fund (Fund) in July, 1989.[1] The Fund is administered by Alexsis Risk Management Service (Alexsis).

On April 3, 1991, Alexsis informed the South Dakota Division of Insurance (Division) of a possible claim against the SIF due to the injury of Bruce Dyer, a District employee who had sustained a second work-related injury and was claiming total disability. The Division denied District's claim on October 30, 1991, based partially on the fact that District was ineligible to make a claim against the SIF as it had neither been assessed nor paid into the SIF. In November and December of 1991, District attempted to submit payments to SIF for past assessments; the payments were refused.

SIF was granted summary judgment by the South Dakota Department of Labor (Labor) on March 17, 1992. Labor determined that District had exercised its option under SDCL 62–5–6 to be neither insured nor self-insured with proof of financial security and its choice had removed it from the SIF assessment process; therefore, it was not eligible for reimbursement from the SIF.

District, alleging error as a matter of law, appealed Labor's decision to the circuit court. The circuit court affirmed and District appeals.

## ANALYSIS

■■■ Upon appeal, questions of law such as statutory interpretation are reviewable by this court de novo. *Dubbelde v. John Morrell & Co.*, 473 N.W.2d 500, 501 (S.D.1991); *Permann v. Dep't of Labor*, 411 N.W.2d 113, 117 (S.D.1987). Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. SDCL 15–6–56(c); *Breen v. Dakota*

1. The Fund is a pool arrangement allowed under SDCL Ch. 1–24 under which government and public entities may band together to provide for payment of claims and liabilities.

2. Although not applicable to this case, we note that SDCL 62–4–34.6 was enacted in 1992; the statute provides:

*Gear and Joint, Inc.*, 433 N.W.2d 221, 223 (S.D.1988).

## I. WHERE A GOVERNMENTAL ENTITY ELECTS UNDER SDCL 62–5–6 NOT TO PROVIDE PROOF OF SECURITY AS A SELF–INSURER IT ELECTS NOT TO PARTICIPATE IN THE SUBSEQUENT INJURY FUND.

Under South Dakota law, employers may either purchase worker's compensation insurance or be self-insured. SDCL 62–5–2 to 62–5–4. Self-insured employers must provide annual proof of financial solvency and ability to pay worker's compensation benefits. SDCL 62–5–5. Although under SDCL 62–1–2 state and political subdivisions are employers for most purposes of worker's compensation, they need not purchase worker's compensation insurance or provide proof of security unless they chose to do so. SDCL 62–5–6 provides:

This state or any municipality or other political subdivision of the state need not furnish any insurance or security as provided by §§ 62–5–1 to 62–5–5, inclusive, or §§ 62–5–10 to 62–5–12, inclusive, but may do so if it desires.

SIF claims South Dakota's statutory scheme creates three classes of employers: 1) Employers insured by authorized worker's compensation carriers; 2) Self-insured employers who meet the requirements of SDCL 62–5–2 to 62–5–5; and 3) Governmental entities who elect under SDCL 62–5–6 not to meet the requirements of 62–5–2 to 62–5–5.[2] The District claims there are only two types of employers—employers who are insured by authorized carriers and self-insured employers—all of whom are included under the SIF.

The SIF is funded through assessments of worker's compensation insurers and self-

No governmental entity located within the state which elects to exercise the exemption from the insurance or security requirements specified in § 62–5–6 is eligible for participation in the subsequent injury fund for the purpose of assessment and reimbursement.

insured employers. In 1991, SDCL 62–4–35 provided, in part:[3]

> The insurance carrier of every employer, or every employer, if self-insured, shall also pay annually on or before March thirty-first to the department of labor an amount equal to one-half of one per centum of all worker's compensation paid to claimants during the calendar year next preceding the due date of such payments, which shall also be deposited in the subsequent injury fund.

In 1991, SDCL 62–4–36 provided:

> When the total amount of the payments into the subsequent injury fund, together with the accumulated interest thereon, equals, or exceeds one hundred thousand dollars, in excess of existing liabilities, no further payments shall be made to the fund; but whenever thereafter, the amount of the fund is reduced below fifty thousand dollars by reason of payments from the fund, then payments to the fund shall be resumed forthwith, and shall continue until the fund, together with accumulated interest thereon, again equals or exceeds one hundred thousand dollars.

Since Division began administering the SIF in July of 1989, two assessments have been made to authorized worker's compensation carriers and self-insured employers who filed their annual proof of security. The record reflects only one payment made into the SIF by a governmental entity electing exemption from proof of ability to pay;[4] this payment was not from District. There was no statutory provision under which Division could assess or notify self-insured government employers who elected exemption from proof of security that payments were due the SIF. Therefore, SIF argues District's election not to provide proof of security was an election not to participate in the SIF.

District is assumed to know the law. *Hanson v. Brookings Hosp.*, 469 N.W.2d 826 (S.D.1991); *accord Chicago Bridge & Iron Co. v. Dep't of Labor*, 46 Wash.App. 252, 731 P.2d 1, 3 (1986) *review denied*, 107 Wash.2d 1032, *cert. denied*, 484 U.S. 823, 108 S.Ct. 87, 98 L.Ed.2d 48 (1987) (because one is assumed to know the law, there was no requirement to notify employer its selection to self-insure removed it from coverage under second injury fund); *Thompson v. North Dakota Worker's Compensation Bureau*, 66 N.D. 756, 268 N.W. 710 (1936) (parties dealing with North Dakota worker's compensation law are presumed to know the law). Therefore District is assumed to have been aware of the existence of the SIF and the requirement of payment into the SIF by employers. Yet, the record presents no evidence of an inquiry by District as to lack of assessments by the Division nor any other attempt to make payments into the SIF before it asserted a claim.

■ District asserts statutes should be liberally construed to find coverage in worker's compensation cases. *Wilcox v. City of Winner*, 446 N.W.2d 772, 775 (S.D. 1989). Its reliance on liberal construction of worker's compensation law is misplaced. Liberal construction of worker's compensation is intended to benefit the injured em-

---

**3.** We note SDCL 62–4–36 was repealed in 1992 and assessment provisions were included in SDCL 62–4–35 which now provides in part:
\* \* \* \* \* \*
> The division of insurance shall assess each insurance carrier of every employer, or every employer, if self-insured, an amount ... which shall be deposited in the subsequent injury fund.... Failure of an insurance carrier of an employer or an employer if self-insured to respond within twenty days of receipt to a notice of assessment from the division of insurance shall, unless good cause is shown, have the effect of making that insurance carrier of an employer or a self-insured employer ineligible for reimbursement from

the subsequent injury fund for any subsequent injury incurred or claim made from the date the assessment is made for a period of one year subsequent to the date the assessment is actually paid.

**4.** District claims a death benefit paid into the SIF by Alexsis for the South Dakota Municipal League Worker's Compensation Fund for Clark Co. in September, 1990, established a course of dealing between Alexsis and the SIF. The check did not mention either the League or the District, therefore Labor determined it did not establish a course of dealing between the District and the Fund.

ployee. *Wilcox*, 446 N.W.2d at 775. Here, Dyer's benefits are not at issue—Dyer will receive benefits regardless of the outcome of District's appeal—the only issue is whether District will receive reimbursement from the SIF. The liberal construction given to worker's compensation statutes is not applicable in these circumstances. *Seattle Sch. Dist. v. Dep't of Labor*, 116 Wash.2d 352, 804 P.2d 621, 625 (1991) (where employee's benefits were not at issue, non-contributing employer could not benefit from liberal construction of worker's compensation second injury statute).

District further asserts that "unless the context otherwise plainly requires, the term 'employer' shall include the state and any municipal corporation." SDCL 62–1–2. District argues that when read in conjunction with SDCL 62–3–5,[5] the statutes establish that District is deemed to have accepted all provisions of SDCL Title 62, including the right to claim reimbursement from the SIF even if it did not pay assessments. *See, Meyerink v. Northwestern Public Services Co.*, 391 N.W.2d 180, 183–84 (S.D. 1986) (statutes should be read together to make them harmonious and workable.)

District's position ignores the rule that when the language of a statute is clear, certain and unambiguous there is no need of statutory construction and the only function of the court is to declare the meaning of the statute as expressed. *Appeal of AT & T Information Systems*, 405 N.W.2d 24 (S.D.1987); *Petition of Famous Brands, Inc.*, 347 N.W.2d 882 (S.D.1984). Where the legislature clearly provided no means for governmental entities electing not to provide proof of financial security to participate in the SIF, District's election took it outside of the coverage of the SIF. This is a situation where the statutory language plainly requires that District be excluded as an "employer" for the purpose of the subsequent injury fund.

The State of Washington faced a similar problem when it changed its law from mandatory state worker's compensation insurance to allow qualified employers to self-insure. *T.I.M.E.–D.C. v. Schuirman*, 42 Wash.App. 607, 711 P.2d 1116, 1117 (1986) *review denied*, 105 Wash.2d 1014 (1986). The mandatory state insurance program had automatically deposited a portion of the insurance premiums into a second injury fund. *T.I.M.E.*, 711 P.2d at 1117. When the law allowing self-insurance was enacted, no provision for self-insurers to participate in the fund was provided. *Id.* When a claim was made against the fund by a self-insured employer, the court held:

> By withdrawing from the established scheme of funding workman's compensation benefits by regular payment of premiums and becoming a self-insurer, T.I.M.E.–D.C. removed itself from coverage. Because it did not pay into the second injury fund, it acquired no right to benefit therefrom.

*Id.* 711 P.2d at 1118. In a subsequent case, the court determined; "to allow CBI access to the second injury fund when it had not paid into either it or the accident fund would arguably interfere with the interests of state-insured employers who had contributed to the funds." *Chicago Bridge & Iron*, 731 P.2d at 3.

■ We agree. Where the legislature provided no mechanism to assess or to notify governmental entities electing self-insured status without providing proof of solvency that payments were due to the SIF, and where the District made no payments into the fund, District plainly elected not to participate in the SIF. Like T.I.M.E.–D.C., District chose to drop worker's compensation insurance and selected an alternative—self-insurance without proof of financial security under SDCL 62–5–6. Like T.I.M.E.–D.C., District did not pay into the SIF. Like T.I.M.E.–D.C., District should not be allowed to claim reim-

---

5. SDCL 62–3–5 provides:
   No employer other than the state, a municipality, or other political subdivision of this state shall be deemed to have accepted the provisions of this title unless he has complied with the provisions of §§ 62–5–1 to 62–5–5, inclusive.

bursement from a fund to which it has not contributed.

MILLER, C.J., and HENDERSON, SABERS and AMUNDSON, JJ., concur.