[No. 30433-3-II.   Division Two.   October 5, 2004.]

SCOTT T. POLLARD, ET AL., *Respondents*, v. WEYERHAEUSER COMPANY, ET AL., *Appellants*.

508

*Craig A. Staples*, for appellants.

*Christine O. Gregoire, Attorney General*, and *David I. Matlick, Assistant*; and *Robert R. Hall* for respondents.

MORGAN, A.C.J. — In this workers' compensation case, the question is whether the Department of Labor and Industries (DLI) may treat noise-related hearing loss not causally related to earlier noise-related hearing loss as a separate and distinct occupational disease. Answering yes, we affirm the trial court's grant of summary judgment to the worker and DLI.

From 1961 to 2000, Scott Pollard worked for Weyerhaeuser as a log truck driver. He was routinely exposed to hazardous noise.

In the late 1970s, Pollard noticed that his hearing had declined. He saw a doctor, who diagnosed nerve damage in his ears.

In 1982, Pollard was diagnosed with a 10 percent hearing loss. Also in 1982, he filed a claim for worker's compensation. DLI allowed the claim and made a permanent partial disability award equal to 10 percent complete hearing loss in both ears. DLI calculated the award using the schedule of benefits that was effective from 1979 to 1986. No one appealed.

Between 1982 and 1999, Pollard continued to work and to be exposed to hazardous noise. According to several audiograms conducted by Weyerhaeuser, his hearing continued to deteriorate. In 1998, he noticed that he could not hear whistles at sporting events and that he needed to turn up the volume on the television.

In 1999, Pollard filed another workers' compensation claim. By then, according to another audiogram, his hearing loss was 45.9 percent. DLI allowed the claim and made a permanent partial disability award equal to 35.9 percent complete hearing loss in both ears (45.9 percent minus the 10 percent loss for which Pollard had been compensated in 1982). DLI calculated the award using the 1999 schedule of benefits.

Weyerhaeuser appealed the award to the Board of Industrial Insurance Appeals. It claimed that DLI should have used the 1979 schedule of benefits that was in effect when, in 1982, Pollard first sought treatment for noise-related hearing loss.

An industrial appeals judge (IAJ) held a hearing at which Pollard called Dr. Alan Langman and Weyerhaeuser called Dr. William Ritchie. Dr. Langman testified that Pollard suffered from noise-induced hearing loss. That type of hearing loss is caused by repeated exposure to sound levels between 85 and 140 decibels. It progressively weakens and finally kills the tiny hairs in the ear. It "stops progressing" when the person ceases to be exposed to hazardous noise, and it remains static or plateaus "[a]ssuming that [the person is] no longer exposed to the noise."[1] After Pollard suffered the hearing loss for which he had made his 1982 claim, he continued to be exposed to noise in the workplace. That post-1982 exposure caused the hearing loss for which he sought treatment in 1994. By 1996, he had lost 45.9 percent of his hearing (35.9 percent of it after 1982), and none of his loss was due to age alone.

---

[1] 3 Report of Proceedings (RP) at 343.

Dr. Ritchie agreed that Pollard had a 45.9 percent hearing loss. The loss had begun by the mid-1970s, had gradually increased, and had plateaued in the mid-1990s at about 35 percent, plus 5 percent for tinnitus (ringing in the ears). The remaining 5.9 percent, Dr. Ritchie believed, was due exclusively to age.

In a proposed decision and order, the IAJ found that Pollard had suffered a 45.9 percent hearing loss. All of it was due to workplace noise, and all but 10 percent of it was due to post-1982 workplace noise. None of it was due to age alone. The present proceeding "originate[d] out of the claimant's 1998 claim for benefits," which was "an entirely separate claim for benefits, a separate exposure, and separate impairment from [his] 1982 claim."[2] Thus, DLI had correctly applied the 1999 benefits schedule.

Weyerhaeuser appealed to the Board of Industrial Insurance Appeals (Board), which by split decision reversed the IAJ's proposed decision and order. Under RCW 51.32.180(b), the applicable benefits schedule is the one in effect on "the date the disease requires medical treatment or becomes totally or partially disabling, whichever occurs first, and without regard to the date of the contraction of the disease or the date of filing the claim." Characterizing hearing loss as a single ongoing disease, and holding that Pollard had first sought treatment for that disease in 1979, the Board concluded that DLI should have used the benefits schedule in effect in 1979. Alternatively, the Board concluded that by virtue of res judicata, DLI should have used the same benefits schedule it had used to calculate the 1982 award. The 1979 benefits schedule was in effect in both 1979 and 1982, so either alternative produced the same result.

Pollard and DLI appealed to the superior court. Weyerhaeuser continued to claim that DLI should have used the 1979 schedule of benefits. Based on *Boeing Co. v.*

---

[2] Clerk's Papers at 96.

*Heidy*,[3] DLI conceded that it should have used the 1994 benefits schedule instead of the 1998 one; DLI continued to deny, however, that it should have used the 1979 schedule. The superior court granted DLI's and Pollard's motions for summary judgment, denied Weyerhaeuser's motion for summary judgment, and ordered DLI to use the 1994 benefits schedule. Weyerhaeuser then filed this appeal.

During the pendency of this appeal, the Board reconsidered its decision in this case, using a different case with similar facts. In *In re Brooks*,[4] the claimant worked for Weyerhaeuser for 30 years. He made a 1984 hearing loss claim that DLI allowed, using the 1979 benefits schedule. He also made a 2001 hearing loss claim that DLI allowed, using the 2001 benefits schedule. The Board reasoned that "[b]ut for the additional exposure to noise, Mr. Brooks would not have had additional hearing loss";[5] that there was "no causal relationship" between Brook's earlier and later claims;[6] and that Brook's later claim involved "a different disease, unrelated to the first."[7] Mindful "that, at least for claims involving hearing loss, the second application for benefits involves the same type of disease, but is a different disease process, arising wholly independently of the first disease,"[8] the Board "overrule[d] [its] decision in *Pollard*" and remanded for a factual determination of "the appropriate date of manifestation."[9]

The question on appeal is whether DLI should have calculated Pollard's award using the 1979 benefits schedule or the 1994 benefits schedule. RCW 51.32.180 provides in part:

---

[3] 147 Wn.2d 78, 88-89, 51 P.3d 793 (2002).

[4] *In re Brooks*, No. 02 17331 Bd. of Indus. Ins. Appeals (BIIA) (Aug. 1, 2003).

[5] *Brooks*, at 4.

[6] *Brooks*, at 3.

[7] *Brooks*, at 4.

[8] *Brooks*, at 2.

[9] *Brooks*, at 4.

> Every worker who suffers disability from an occupational disease in the course of employment . . . shall receive the same compensation benefits . . . as would be paid and provided for a worker injured or killed in employment under this title, except as follows: . . . (b) for claims filed on or after July 1, 1988, the rate of compensation for occupational diseases shall be established as of the date the disease requires medical treatment or becomes totally or partially disabling, whichever occurs first, and without regard to the date of the contraction of the disease or the date of filing the claim.

The dispute in this case concerns whether Pollard's noise-related hearing loss is properly characterized as one or two occupational diseases. Weyerhaeuser argues that Pollard's pre-1982 and post-1982 exposures were part of the same ongoing disease; that both were compensable under the 1979 benefits schedule; and that DLI erred by applying the 1994 benefits schedule to the post-1982 exposures. Pollard and DLI argue that Pollard's post-1982 hearing loss would have occurred even without his pre-1982 hearing loss; that his pre-1982 hearing loss would have occurred even without his post-1982 hearing loss; that the later loss is properly viewed as a separate and distinct occupational disease for which Pollard first sought treatment in 1994; and thus that DLI properly applied the 1994 benefits schedule to his later loss.

We agree with Pollard, DLI, the Board in *Brooks*, and the superior court. As the West Virginia Supreme Court has said:

> [O]nce noise exposure stops, so does the progression of the hearing loss unless other factors are involved. Damage to hearing is permanent: Once the hair cells in the cochlea are destroyed, the cells cannot be rejuvenated. Thus, once the damage is done, one's hearing can get neither better nor worse because of noise exposure.[10]

---

[10] *Blackburn v. Workers' Comp. Div.*, 212 W. Va. 838, 847, 575 S.E.2d 597 (2002).

Dr. Langman testified to this effect,[11] and Dr. Ritchie testified consistently. Here then, Pollard's 1999 claim was for an occupational disease separate and distinct from the one for which he claimed in 1982; he first sought treatment for the later disease in 1994; and DLI correctly applied the 1994 benefits schedule.

Weyerhaeuser argues that RCW 51.32.180(b)'s "focus on the disease necessitates consideration of its nature and characteristics,"[12] and that the medical evidence given here "supports *only* the conclusion that [the] claimant has just one occupational disease: sensorineural hearing loss."[13] As just discussed, however, Dr. Langman's testimony supports the conclusion that Pollard's hearing loss emanated from two causally independent, "pathologically distinct" diseases.[14]

Weyerhaeuser argues that RCW 51.32.180(b) "is not ambiguous" and "provides one schedule of benefits" for noise-related hearing loss.[15] The statute, however, simply does not address the question. It is ambiguous and must be construed liberally in favor of the worker.[16]

■ Weyerhaeuser hypothesizes two workers, each of whom "sustain[s] progressively increasing hearing loss while working 20 years for the same employer," and asserts that DLI's construction of RCW 51.32.180(b) will "disadvantage[ ]" one.[17] We perceive no legally significant disparity because each worker has equal *opportunity*, whether or not he takes advantage of it, and further, because a worker

---

[11] *See, e.g.,* CP at 93 ("typically, once the person is removed from the noxious element, in this case noise, the hearing loss will stop progressing"); 3 RP at 341, 343.

[12] Br. of Appellant at 11.

[13] Br. of Appellant at 12 (emphasis added).

[14] *See* Br. of Appellant at 14.

[15] Br. of Appellant at 17.

[16] RCW 51.12.010.

[17] Br. of Appellant at 18.

who chooses to delay cannot complain when benefit levels change due to intervening legislation.[18]

■ Weyerhaeuser argues that no one appealed the 1982 award, which used the 1979 benefits schedule; that Pollard is presently reasserting the same claim; and thus that res judicata precludes DLI from now applying a benefits schedule other than the 1979 one. Res judicata, however, applies only when the claim presently being asserted is the same as a claim that was previously presented and resolved.[19] Because Pollard's 1982 and 1999 claims were for two separate and distinct hearing losses, we hold that res judicata does not apply.

■ As DLI correctly points out, RCW 51.16.040 tends to support our conclusions here. The statute requires that benefits for occupational diseases be paid in the same manner as benefits for industrial injuries. When two injuries occur, each unrelated to the other, the rights of the claimant are governed by the law in force on each date of injury.[20] "Just as multiple dates of injury will give rise to multiple industrial injury claims, so also will the worker who establishes separate and distinct diseases from asbestos exposure be able to claim separate dates of manifestation."[21] Here then, DLI correctly established a separate date of manifestation for each of Pollard's two separate and distinct occupational diseases.

Before closing, we caution that our resolution of this case turns on the specific nature of noise-related hearing loss. We have not considered other occupational diseases, or even other kinds of hearing loss, and our opinion may not be applicable to those situations. Omitting arguments that clearly lack merit or that need not be reached, we conclude

---

[18] Cf. Harris v. Dep't of Labor & Indus., 120 Wn.2d 461, 472-73, 843 P.2d 1056 (1993).

[19] Karniss v. Dep't of Labor & Indus., 39 Wn.2d 898, 900-01, 239 P.2d 555 (1952).

[20] Seattle Sch. Dist. No. 1 v. Dep't of Labor & Indus., 116 Wn.2d 352, 358, 804 P.2d 621 (1991).

[21] Kilpatrick v. Dep't of Labor & Indus., 125 Wn.2d 222, 231, 883 P.2d 1370 (1994).

that DLI did not err by applying the 1994 benefits schedule to Pollard's 1999 claim for noise-related hearing loss.

Affirmed.

BRIDGEWATER and VAN DEREN, JJ., concur.

Review denied at 154 Wn.2d 1014 (2005).